Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
1850 45th Ave. NE, Suite 33
Salem, OR 97305
(503) 917-4409 Phone
(916) 857-6902  Facsimile

Attorneys for Plaintiffs
ABOLISH ABORTION OREGON et al.

UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| ABOLISH ABORTION OREGON, An Unincorporated Association; MASON GOODKNIGHT, An Individual; SHAWN KELLIM, An Individual; RYAN CLARK, An Individual; MARK MAYBERRY, An Individual; LORI MAYBERRY, An Individual; ROBBY MAYBERRY, An Individual; and RICKY MAYBERRY, An Individual, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF GRANTS PASS, A Municipality; JAMES HAMILTON, An Individual; TIMOTHY ARTOFF, An Individual; JASON McGINNIS, An Individual; and DOES 1 THROUGH 50, Inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, ECONOMIC DAMAGES, NON-ECONOMIC, AND PUNITIVE DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]** <br><br> **JURY TRIAL REQUESTED** |

Plaintiffs ABOLISH ABORTION OREGON ("AAOR"), MASON GOODKNIGHT ("GOODKNIGHT"), SHAWN KELLIM ("KELLIM"), RYAN CLARK ("CLARK,"), MARK MAYBERRY ("MAYBERRY"), LORI

---
Complaint
1

MAYBERRY ("LORI M."), ROBBY MAYBERRY ("ROBBY M."), and RICKY MAYBERRY ("RICKY M.," and collectively with GOODKNIGHT, KELLIM, CLARK, MAYBERRY, and LORI M. "Plaintiffs") hereby allege as follows:

## PARTIES

1. Plaintiffs are, and at all times herein were, U.S. citizens and residents of Oregon.

2. Plaintiff AAOR is, and at all times herein was, an unincorporated association based in Roseburg, Oregon, whose members consist of Christians from throughout Oregon who are dedicated to calling the public's attention to the horrors of abortion and calling on legislators to abolish and criminalize the inhumane practice.

3. Plaintiff GOODKNIGHT is, and at all times herein was, a resident of Roseburg, Oregon, and the coordinator of AAOR's evangelism outings.

4. Plaintiff KELLIM is, and at all times herein was, a resident of Glide, Oregon, and an active member of AAOR.

5. Plaintiff CLARK is, and at all times herein was, a resident of Grants Pass, Oregon, and an active member of AAOR.

6. Plaintiff MAYBERRY is, and at all times herein was, a resident of Riddle, Oregon, and an active member of AAOR.

7. Plaintiff LORI M. is, and at all times herein was, a resident of Riddle, Oregon, the wife of Plaintiff MAYBERRY, and an active member of AAOR.

8. Plaintiff ROBBY M. is, and at all times herein was, a resident of Riddle, Oregon, the teen-aged son of MAYBERRY and LORI M., and an active member of AAOR.

9. Plaintiff RICKY M. is, and at all times herein was, a resident of Riddle, Oregon, the teen-aged son of MAYBERRY and LORI M., and an active member of AAOR.

10. Defendant CITY OF GRANTS PASS (the "CITY") is, and at all times herein was, a public body as defined in ORS 30.260(4)(b) and 174.109.

11. Defendant JAMES HAMILTON ("HAMILTON") is, and at all times here in was, the Deputy Chief of Defendant CITY's Department of Public Safety ("DPS").

12. Defendant TIMOTHY ARTOFF ("ARTOFF") is, and at all times herein was, a police officer employed by Defendant CITY.

13. Defendant JASON McGINNIS ("McGINNIS," and collectively with CITY and ARTOFF "Defendants") is, and at all times herein was, a police officer employed by Defendant CITY.

14. The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiffs, who thus sue said Defendants under such fictitious names. Each of the Defendants designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiffs thereby, as herein alleged. Plaintiffs will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

15. Plaintiffs refer to and hereby incorporate the allegations of Paragraphs 1 through 14 into this Paragraph as if fully set forth herein.

16. This Court has jurisdiction over the Defendants pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the Constitution and laws of the United States.

## VENUE

17. Plaintiffs refer to and hereby incorporate the allegations of Paragraphs 1 through 16 into this Paragraph as if fully set forth herein.

18. Venue is proper in the Court's Medford Division because the incidents giving rise to this Complaint occurred in the County of Josephine and all Defendants are located in, employed in, or residents of, the County of Josephine.

## GENERAL ALLEGATIONS

19. Plaintiff refers to and hereby incorporates by reference the allegations set forth in Paragraphs 1 through 18 into this Paragraph as if fully set forth herein.

20. AAOR is an organization comprised of Christian evangelists and anti-abortion activists who travel around Oregon to share the gospel of Jesus Christ and to call for the abolition and criminalization of abortion throughout the United States. AAOR's members do this through a variety of methods, including open-air preaching, passing out tracts, holding up signs, and engaging willing individuals in conversation.

21. Because of the large crowds that they draw, AAOR's members frequently attend events that take place in Grants Pass, including, but not limited to, First Friday (a monthly celebration of the arts), the Saturday Growers' Market, and the annual Boatnik festival. At these events, members of AAOR take turns open-air preaching – sometimes using electronic sound-amplification devices ("amplifiers"), sometimes without – while others hold anti-abortion signs and/or pass out gospel tracts. Some AAOR members' signs merely contain words, while others feature graphic images of aborted children.

22. AAOR's members also regularly preach their anti-abortion message outside the Planned Parenthood clinic located at 180 NW Franklin Blvd. ("Planned Parenthood") in Grants Pass.

23. The CITY's law enforcement arm, the Department of Public Safety ("DPS"), has engaged in a consistent pattern of harassment aimed at silencing AAOR's members that dates back to at least 2017. This pattern includes, but is by no means limited to, the following occurrences:

   a. On June 23, 2017, Plaintiff GOODKNIGHT was present at a concert in Grants Pass. While another member of AAOR was preaching, a DPS officer approached GOODKNIGHT, who is employed by the Douglas County Sheriff's Office ("DCSO") in Roseburg, and asked if GOODKNIGHT knew Brian Sanders ("Sanders"), who was DCSO's second-highest-ranking officer at the time. GOODKNIGHT said he did, and the DPS officer threatened to tell Sanders what GOODKNIGHT was up to – clearly implying that he intended to get GOODKNIGHT in trouble with, if not fired by, DCSO if he did not cease his evangelism activities immediately.

   b. On October 17, 2018, Plaintiffs GOODKNIGHT and MAYBERRY took turns preaching with a small amplifier at the Saturday Growers' Market at the corner of 4th and F streets in Grants Pass. GOODKNIGHT and MAYBERRY used the amplifier for two reasons: 1) They had to compete with a great deal of ambient noise – specifically, loud music and cars passing by on the street – and 2) so they could communicate in normal, civilized tones without having to raise their voices. They kept the amplifier's volume at roughly 50 percent – loud enough for those attending the Growers' Market to hear, but not so loud that it could be heard beyond half a block away. They in no way inhibited the

    merchants at the Growers' Market from conducting their business. Still, in response to complaints from individuals who presumably found the AAOR members' message offensive, two DPS officers, Will Taylor and Jonah Kopp, approached GOODKNIGHT and informed him that it was against local law to use amplification to preach at any time or place other than First Fridays. AAOR's attorney sent a letter to Defendant CITY's counsel explaining why the actions of officers Taylor and Kopp violated the rights of AAOR and its members under both the U.S. Constitution's First Amendment and Article I, § 8 of the Oregon Constitution. A copy of that letter is attached hereto as **Exhibit "A."** Despite receiving that letter – something the CITY's counsel acknowledged in a city council meeting – the CITY took no action to prohibit further trampling of the constitutionally protected free speech rights of AAOR and its members.

c. On May 3, 2019, AAOR members attended a First Friday event. Plaintiff GOODKNIGHT used an amplifier while preaching. DPS informed GOODKNIGHT at that time that the CITY had changed its policy and was no longer allowing speakers to use amplifiers even at First Fridays. In response, AAOR members stopped using the amplifier and started using non-electronic plastic cones. Initially, the DPS officers allowed the use of the cones, but then changed their minds on that, too.

d. On May 4, 2019, AAOR members are again harassed by DPS officers following complaints from merchants and/or others at the Saturday Growers' Market. Plaintiff ROBBY M., a relatively

    quiet teen-ager who was merely passing out tracts, was accused of soliciting at the Growers' Market and escorted out of the Market by DPS officers.

e. On May 25-26, 2019, AAOR members attended the CITY's annual Boatnik festival.  Again, members took turns using an amplifier to ensure their message would be heard.  Repeatedly, DPS officers threatened them – Plaintiffs MAYBERRY and KELLIM in particular – with citations if they did not stop.  This was the first time in roughly a decade of attending Boatnik that AAOR's members had been harassed by police over their use of amplification.  Among the DPS officers who made these threats were Josh Nieminen and Max Anuschat.

f. On June 17, 2019, Plaintiff RICKY M., then aged 14, his mother, Plaintiff LORI M., and other AAOR members were engaged in constitutionally protected free speech activities outside Planned Parenthood.  RICKY M. was sitting in a lawn chair on the sidewalk, holding an anti-abortion sign, when Defendant ARTOFF approached and cited RICKY M. for "obstructing traffic" in violation of Grants Pass Mun. Code § 5.36.010, angrily telling RICKY M., "You've been warned."  It was the first interaction RICKY M. had ever had with ARTOFF.  A copy of RICKY M.'s citation is attached hereto as **Exhibit "B."**

Furthermore, when he cited RICKY M., ARTOFF falsely claimed that RICKY M. had been sitting in the street, in a handicapped parking spot near the curb.  RICKY M. had, in fact, been sitting in a lawn chair on the sidewalk at the time.  ARTOFF's citation of

    RICKY M. was merely a pretext to silence him and other AAOR members from speaking out against abortion, and ARTOFF targeted a 14-year-old kid to do it. The charge against RICKY M. was ultimately dismissed, but not before RICKY M. and his family had to make a trip to Grants Pass to contest the ticket and spend more than two months worrying about his trial.

g. On July 25, 2019, Plaintiff KELLIM was preaching on the sidewalk outside of Planned Parenthood. Defendants HAMILTON, ARTOFF, and McGINNIS all showed up to tell him to leave. This was not a situation where three police officers needed to be present to deescalate a situation; the officers targeted KELLIM to intimidate him into silence.

h. On August 8, 2019, Plaintiff KELLIM was preaching outside Planned Parenthood when Defendant McGINNIS and DPS Officer Jeff Hattersley harassed and threatened to cite him for disturbing the peace and disorderly conduct for using an amplifier.

i. On August 15, 2019, Plaintiff KELLIM was preaching outside Planned Parenthood again when Defendants ARTOFF and McGINNIS cited him for using an amplifier. A copy of the citation is attached hereto as **Exhibit "C."** The citation charges KELLIM with disorderly conduct in the first degree, which concerns making a false report concerning an alleged fire, explosion, catastrophe, hazardous substance, or other emergency. *See* ORS 166.023. The County of Josephine did not pursue the charge against KELLIM.

j. In early September 2019, Plaintiff LORI M. and several other AAOR members went to share their message on the sidewalk outside Planned Parenthood.  Defendant HAMILTON, DPS' second-highest ranking officer, took it upon himself to talk to the AAOR members, LORI M. in particular, and make sure that they were not using amplification.  HAMILTON asserted his position as DPS' second-highest ranking officer to intimidate LORI M. and her fellow AAOR members into silence.

k. On September 15, 2019, Plaintiff KELLIM was preaching with an amplifier outside Planned Parenthood again when Defendant McGINNIS and DPS Officer Jeff Craven threatened to cite him for disturbing the peace.

l. On January 2, 2020, Plaintiff CLARK was preaching without any amplification outside Planned Parenthood.  His voice was slightly raised, but he was not shouting.  DPS Officer Jennings Stewart still came up and told CLARK he was preaching too loudly and ordered him to stop.  Officer Stewart further stated that if DPS continued to receive complaints, CLARK and his fellow AAOR members would be cited for trespass and prohibited from using the public sidewalk outside Planned Parenthood.

m. On February 28, 2020, Plaintiff GOODKNIGHT was preaching with an amplifier outside Planned Parenthood.  DPS Officer Jason Peil of the DPS dishonestly told GOODKNIGHT that a local ordinance (see Paragraphs 33-35, below) prohibited him from using amplification without a permit.  When GOODKNIGHT asked Officer Peil to show him the ordinance, Officer Peil refused.

    Officer Peil insisted that GOODKNIGHT was operating his amplifier at an unreasonable volume, and when GOODKNIGHT asked what volume would be reasonable, Officer Peil did not give GOODKNIGHT a straight answer with which GOODKNIGHT could comply.  Officer Peil then became visibly frustrated and threatened to arrest GOODKNIGHT for disorderly conduct because GOODKNIGHT was allegedly "causing public alarm."

n. On March 6, 2020, Plaintiff CLARK was preaching with amplification outside Planned Parenthood.  DPS Officer Lucas Six arrived on the scene.  Although Officer Six admitted that Defendant CITY's relevant noise ordinance (see Paragraphs 32-34, below) was subjective and that CLARK was preaching at a volume that was not necessarily unreasonable, Officer Six still ordered CLARK to stop preaching with amplification.

Later that same day, on the south corner of G Street at the intersection of 6th and G streets, CLARK was engaging with someone in civil, peaceful conversation when Defendant ARTOFF arrived in response to a complaint.  ARTOFF told CLARK to stop talking and move away.  When another DPS officer, Mike Miner, advised ARTOFF that CLARK was not breaking any laws or ordinances, ARTOFF allowed CLARK to stay.

o. On March 12, 2020, Plaintiff CLARK was again preaching outside Planned Parenthood.  DPS Officer Derek Evans arrived on the scene and ordered CLARK to stop preaching.  When CLARK tried to press Officer Evans about the noise ordinance, Officer Evans

made clear he did not want to discuss it. Officer Evans then threatened to arrest CLARK if he did not stop preaching.

24. A timeline with links to videos of several of the aforementioned incidents is attached hereto as **Exhibit "D."**

25. In every instance cited above, Plaintiffs preached their message in a traditional public forum.

26. Defendants HAMILTON, ARTOFF, and McGINNIS, more than any other DPS officers, have attempted to silence AAOR's members from preaching their anti-abortion message.

## SOLE CAUSE OF ACTION: DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]
### Against All Defendants

27. Plaintiffs refer to and hereby incorporate by reference the allegations set forth in Paragraphs 1 through 26 into this Paragraph as if fully set forth herein.

28. Under 42 U.S.C. § 1983, anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" A municipality, such as Defendant CITY, can be held liable for civil rights violations where action pursuant to official municipal policy of some nature cause[s] a constitutional tort.

29. Furthermore, under § 1983, a city official, such as Defendants HAMILTON, ARTOFF, and McGINNIS, who violates federal law can be stripped of his official or representative character and subjected in his person to the consequences of his individual conduct.

30.     The U.S. Constitution's First Amendment, as applied to states through the Fourteenth Amendment, prohibits states from infringing on individuals' freedoms of speech and religion.  Under the Fourteenth Amendment's Equal Protection Clause, meanwhile, no state may "deprive any person of life, *liberty*, or property without due process of law; nor deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1 (emphasis added).

31.     Acting under color of state law, Defendants HAMILTON, ARTOFF, and McGINNIS, in their capacity as police officers employed by Defendant CITY, intentionally deprived Plaintiffs of their constitutionally protected liberties of free speech and religion by engaging in a consistent pattern of harassment in order to silence them.  Defendants were substantially motivated by a desire to prevent Plaintiffs from exercising their constitutionally protected free speech and religious rights and used their positions as officers of the law toward that end.  The actions of HAMILTON, ARTOFF, and McGINNIS make abundantly clear that CITY has a custom, policy, and practice of trying to silence Christians who preach their views openly in the public square.

## REQUEST FOR DECLARATORY RELIEF

32.     Plaintiffs refer to and hereby incorporate by reference the allegations set forth in Paragraphs 1 through 31 into this Paragraph as if fully set forth herein.

33.     In targeting and harassing Plaintiffs for exercising their freedoms of speech and religion, Defendants presumably aim to enforce Grants Pass Mun. Code § 5.12.110 (the "Sound Ordinance" or the "Ordinance").  Subsection (A) of the Sound Ordinance states, "No person may make, assist in making, continue or cause to be making any loud, disturbing, or unnecessary noise which either *annoys, disturbs, injures or endangers the comfort*, repose, health, safety *or peace of others*" (emphasis added).  Section (B)(11) of the Sound Ordinance

defines "loud, disturbing, and unnecessary noises" to include "[t]he use or operation of … any sound-amplifying device so loudly as to disturb persons in the vicinity thereof or in such a manner that renders the use thereof a nuisance."

34. The Sound Ordinance is unconstitutional on its face, as it is overbroad, vague, and contains content- and speaker-based restrictions:

    a. The Sound Ordinance is overbroad because it is not narrowly tailored to achieve Defendant CITY's significant government interest in protecting its citizens from unwelcome noise, and therefore infringes on far more favored expressive activity in a traditional public forum than is necessary to achieve the government's purposes: All someone has to do is complain that a speaker using an amplifier – or even one who is not, as happened with Plaintiff CLARK – is annoying or disturbing him or her to get a police officer to come and use the threat of a citation, if not the issuance of a citation, to silence the speaker. Moreover, it may not even be the volume of a speaker's speech, but its content, that the complainer finds disturbing. The First Amendment exists in part to protect unpopular speech, and the Sound Ordinance gives the CITY's police officers far too much power to shut it down.

    b. The Sound Ordinance is also vague, as it invites arbitrary and discriminatory enforcement: The Ordinance provides no decibel level that speakers using amplifiers cannot exceed, making even good-faith attempts to comply with the Ordinance punishable by law. Because the Ordinance provides no standards or guidelines to follow, it gives Defendant CITY's police officers virtually unrestrained power to charge speakers with violating the law.

    c. The Sound Ordinance contains a content-based restriction, as it only allows the use of sound-amplifying equipment "for the broadcast or amplification of *music, news, speeches, or general entertainment* as a part of a national, state, or City event, public festivals or outstanding events of a noncommercial nature," and then only after the organizer of the relevant event obtains a permit. Grants Pass Mun. Code § 5.12.110(B)(11) (emphasis added). Even assuming *arguendo* that Plaintiffs' activities fall into the category of "speeches," the language cited above makes clear that individuals can only engage in speech using amplification as part of organized events and renders the exercise of protected rights subject to Defendant CITY's approval, which the U.S. Constitution does not allow.

    d. The Sound Ordinance also contains a speaker-based restriction, as it shows a preference for organizers of events as opposed to everyday individuals with a message to speak.

35. Based on the foregoing, Plaintiffs request a declaration from the Court stating that the Sound Ordinance is unconstitutional, both on its face and as applied to Plaintiffs.

## REQUEST FOR INJUNCTIVE RELIEF

36. Plaintiffs refer to and hereby incorporate by reference the allegations set forth in Paragraphs 1 through 35 into this Paragraph as if fully set forth herein.

37. Because Defendant CITY's efforts to silence Plaintiffs have continued unabated since at least 2017, Plaintiffs hereby request that the Court preliminarily and permanently enjoin all Defendants from enforcing the Sound Ordinance

against Plaintiffs in a manner that unconstitutionally abridges Plaintiffs' First Amendment freedoms.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

### ON ALL CAUSES OF ACTION:

1. For declaratory and injunctive relief, as stated *supra*;

2. For economic damages against all Defendants in an amount according to proof at trial;

3. For non-economic damages against all Defendants in the amount of $400,000 ($50,000 per Plaintiff);

4. For punitive damages against Defendants HAMILTON, ARTOFF, and McGINNIS in an amount that the Court deems proper;

5. For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

6. For such other and further relief as the Court may deem proper.

Dated: March 24, 2020                    PACIFIC JUSTICE INSTITUTE

                                                                         __/s/ RAY D. HACKE_____
                                                                         Ray D. Hacke
                                                                         Attorney for Plaintiffs
                                                                         ABOLISH ABORTION OREGON *et al.*

## PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon. I am over the age of eighteen and not a party to the within action; my business address is 1850 45th Ave., Suite 33, Salem, OR 97305.

On or about March 24, 2020, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, ECONOMIC DAMAGES, NON-ECONOMIC, AND PUNITIVE DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**

### PLEASE SEE ATTACHED SERVICE LIST

_____ BY MAIL: I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. postal service on that same date with postage thereon fully prepaid at Salem, Oregon in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__ BY PERSONAL SERVICE: I caused such envelope to be delivered by hand to the office of the addressee(s).

_____ BY FACSIMILE TRANSMISSION: The facsimile machine I used complied with California Rules of Court 2003(3) and no error was reported by the machine. Pursuant to rule 2005(i), I caused the machine to print a record of the transmission, a copy of which is attached to this proof of service.

_____ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 24, 2020, at Salem, Oregon.

/s/ RAY D. HACKE_____
Ray D. Hacke

# SERVICE LIST

Mark Bartholomew
City Attorney
City of Grants Pass
101 Northwest A St.
Grants Pass, OR 97526

James Hamilton
Deputy Chief
Grants Pass Department of Public Safety
101 Northwest A St.
Grants Pass, OR 97526

Timothy Artoff
Officer
Grants Pass Department of Public Safety
101 Northwest A St.
Grants Pass, OR 97526

Jason McGinnis
Officer
Grants Pass Department of Public Safety
101 Northwest A St.
Grants Pass, OR 97526