IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ABOLISH ABORTION OREGON, et al.                    Case No. 1:20-cv-00484-AA

        Plaintiff,                                      **OPINION AND ORDER**

   vs.

CITY OF GRANTS PASS, et al.,

        Defendants.

_____

AIKEN, District Judge:

      Plaintiffs Abolish Abortion Oregon ("AAOR"), an unincorporated association of Christian evangelists and anti-abortion advocates, and seven of its members bring this action against the City of Grants Pass, officers of the Grants Pass Department of Public Safety ("DPS"),[1] and 50 Doe defendants.  Plaintiffs allege that DPS officers harass and threaten them whenever they gather to preach in the City, under the guise of Grants Pass Municipal Code § 5.12.110, which prohibits certain "unnecessary

---

[1] After the preliminary injunction hearing, plaintiffs stipulated to dismissal of the three named DPS Officers.  Docs. 48, 49.

Page 1 – OPINION AND ORDER

noise" (the "Sound Ordinance"). They allege that, in doing so, defendants have violated their First Amendment rights to free speech and free exercise of religion.

After plaintiffs initiated this action, the City agreed that the Sound Ordinance presented some constitutional concerns and began working with plaintiffs to amend the ordinance. Plaintiffs then filed this Motion for Preliminary Injunction (doc. 17), asserting that they had demonstrated a "pattern of DPS attempts to chill Plaintiffs' exercise of their free speech rights . . . by enforcing the [Sound] Ordinance against Plaintiffs[,]" which plaintiffs argued was overbroad, vague, and imposed content-based and speaker-based restrictions on speech. Defendants responded that the City is not enforcing the Sound Ordinance during the amendment process.

The Court heard oral argument on this motion on October 8, 2020, and denied the motion at the hearing. This Opinion and Order provides findings and reasons supporting the Court's ruling.

## BACKGROUND

### I.    *Factual Context*

The following facts are taken from the First Amended Complaint ("FAC") (doc. 13) and the parties' declarations and exhibits.

#### A.    *The Parties*

AAOR is an unincorporated association based in Roseburg, Oregon, "whose members consist of Christians from throughout Oregon who are dedicated to calling the public's attention to the horrors of abortion and calling on legislators to criminalize the inhumane practice." FAC ¶ 2. AAOR members "travel around Oregon

to share the gospel of Jesus Christ and to call for the abolition and criminalization of abortion." *Id.* ¶ 20. They use a variety of methods to share their methods, including "open-air preaching, passing out tracts, holding up signs, and engaging willing individuals in conversation." *Id.*

Plaintiffs Mason Goodknight, Ryan Clark, Shawn Kellim, Mark Mayberry, Lori Mayberry, Robby Mayberry, and Ricky Mayberry are all members of AAOR who have demonstrated and preached around Grants Pass and who have been contacted by police officers while doing so. *See* Goodknight Decl. (doc. 17 Ex. 1); Clark Decl. (doc. 17 Ex. 2); Kellim Decl. (doc. 17 Ex. 3); Mark M. Decl. (doc. 17 Ex. 4); Lori M. Decl. (doc. 17 Ex. 5); Robby M. Decl. (doc. 17 Ex. 6); Ricky M. Decl. (doc. 17 ex. 7).

Defendants include the City of Grants Pass; James Hamilton, Deputy Chief of Grants Pass DPS; two DPS officers, Timothy Artoff and Jason McGinnis; and 50 unnamed Does, who are "legally responsible for the events and happenings" alleged in the FAC and "proximately caused" plaintiffs' alleged injuries.[2] FAC ¶ 14.

### B. *Plaintiffs' Activities and Law Enforcement Response*

In Grants Pass, AAOR members attend events like First Friday (a monthly arts celebration), the annual Boatnik festival, and most frequently the Saturday Growers' Market because of the large crowds the events draw. *Id.* ¶ 21. At the events, AAOR members take turns preaching—sometimes using electronic sound-amplification devices ("amplifiers"). *Id.* Plaintiffs explain that they use amplifiers so that they can preach in normal, civil tones, while still reaching a "fairly wide

---

[2] Again, the claims against Deputy Chief Hamilton, Officer Artoff, and Officer McGinnis have been dismissed.

audience." Goodknight Decl. (doc. 17 Ex. 1) ¶ 9; Clark Decl. (doc. 17 Ex. 2) ¶ 6; Kellim Decl. (doc. 17 Ex. 3) ¶ 6; Mark M. Decl. (doc. 17 Ex 4) ¶ 6.  The others hold anti-abortion signs or pass out gospel tracts.  FAC ¶ 21.

AAOR members also preach their anti-abortion message near the Planned Parenthood clinic located at 180 NW Franklin Boulevard in Grants Pass.  *Id.* ¶ 22. The Planned Parenthood is in a small complex of buildings at the corner of NW Franklin and NW Washington Boulevard.  Swanson Decl. (doc. 36) at 2; Franz Decl. (doc. 38) Ex. 110.  The complex includes one other building, which housed family practice offices throughout the relevant period.  Carvalho Decl. (doc. 23) at 2; Davis Decl. (doc. 25) at 2; Rumrey Decl. (doc. 39) at 2.  There are also two Met One office buildings across NW Washington from the complex.  Hamilton Decl. (doc. 28) at 2; Franz Decl. (doc. 38) Ex. 110.

Wherever they go, AAOR members attract a lot of attention and a lot of complaints, including complaint calls to DPS.  Most often, the complaints relate to the volume and duration of their amplified preaching.  *See* Docs. 23, 25, 36, 39 (declarations describing noise level inside Planned Parenthood and medical offices); Franz. Decl. (doc 38) Exs. 108E, 108H (witnesses describing noise level inside Met One buildings); Docs. 30, 34 (declarations describing noise levels at the Growers' Market), Doc. 38 Ex. 130 (complaint emails and feedback response notes from vendors and attendees).  DPS has also received complaints that AAOR members have blocked sidewalks at the Growers' Market; brought their signs and amplifiers into the Market; blocked parking spaces near the Planned Parenthood; and trespassed on

private property in front of the Planned Parenthood. Franz Decl. (doc. 38) Exs. 101A, 102A, 112, 115, 115A, 123, 124, 125.

On several occasions, DPS officers have responded to complaints and engaged with plaintiffs. As relevant here, when responding to noise complaints, officers frequently asked plaintiffs to turn their amplifiers down or off. *See* Franz Decl. (doc. 38) Exs. 108, 108F, 111, 112, 113. Officers also told plaintiffs that the City's Sound Ordinance prohibits amplification without a permit. *See* Franz Decl. (doc. 38) Exs. 111, 113. Although officers warned plaintiffs that they could be cited for violating the Sound Ordinance, no plaintiffs have been cited or arrested for a Sound Ordinance violation.[3]

### C.    *The Sound Ordinance*

The Sound Ordinance, Grants Pass Municipal Code ("GPMC") § 5.12.110, is titled "Unnecessary Noise." Subsection A of the Sound Ordinance provides: "No person may make, assist in making, continue or cause to be making any loud, disturbing or unnecessary noise which either annoys, disturbs, injures or endangers the comfort, repose, health, safety or peace of others." GPMC § 5.12.110(A).

---

[3] Two plaintiffs have been cited for other violations. On June 17, 2019, Officer Artoff cited Ricky Mayberry for "obstructing traffic," in violation of Grants Pass Municipal Code § 5.36.010, outside Planned Parenthood. Decl. of Ricky Mayberry (doc. 17 ex. 7) Ex. A. On August 15, 2019, Officer Artoff cited Shawn Kellim for Disorderly Conduct in the first degree for using an amplifier outside Planned Parenthood and refusing to stop when ordered. Decl. of Shawn Kellim (doc. 17 ex, 3) Ex. B. Although these citations may be relevant to plaintiffs' broader claim that their First Amendment rights were violated, plaintiffs allege likelihood of success on the merits here based on DPS's enforcement of the unconstitutional Sound Ordinance. *See* Mot. for Preliminary Injunction (doc. 17) at 10–11, 18.

Subsection B provides a nonexclusive list of conduct that constitutes "loud, disturbing or unnecessary noises" that violate the section.  GPMC § 5.12.110(B).  As relevant here, under subsection B(11), "[t]he use or operation of . . . any sound-amplifying device so loudly as to disturb persons in the vicinity thereof or in such a manner as renders the use thereof a nuisance" is a prohibited unnecessary noise. GPMC § 5.12.110(B)(11).  But subsection B(11) also outlines a permitting process for loud "broadcast[s] or amplification" that might otherwise violate the ordinance.  *Id.* Specifically, it provides:

> However, upon application to the Council permits may be granted to responsible persons or organizations for the broadcast or amplification of programs of music, news, speeches, or general entertainment as a part of a national, state or City event, public festivals or outstanding events of a noncommercial nature.  The broadcast or amplification shall not be audible for a distance of more than one thousand (1,000) feet from the instrument, speaker, or amplifier, and in no event shall a permit be granted where any obstruction to the free and uninterrupted traffic, both vehicular and pedestrian, will result.

*Id.*

## II.    *Procedural History*

Plaintiffs filed this action on March 24, 2020.  Doc. 1.  FAC asserts a single claim under 42 U.S.C. § 1983.  FAC ¶¶ 27–31.  Specifically, it asserts a First Amendment Retaliation claim against the police officer defendants and a theory of *Monell* liability against the City.  *Id.* ¶ 31.  The FAC alleges that "[d]efendants presumably aim to enforce" the Sound Ordinance and that the Sound Ordinance violates plaintiffs' constitutionally protected rights because it is overbroad, vague, and imposes content-based and speaker-based restrictions through its permit provision.  *Id.* ¶¶ 33–34.  Plaintiffs seek (1) a declaration that the Sound Ordinance

is unconstitutional on its face and as applied; (2) preliminary and permanent injunctions preventing defendants from "enforcing the Sound Ordinance against Plaintiffs in a manner that unconstitutionally abridges Plaintiff's First Amendment Freedoms[;]" and (3) damages. *Id.* ¶ 35, 37.

Plaintiffs filed this Motion for Preliminary Injunction on August 18, 2020. Doc. 17. In it, plaintiffs seek an injunction to preliminarily enjoin the Grants Pass Department of Public Safety (the City's police department) from doing the following "without probable cause":

1. Evicting, removing, or excluding AAOR, its Members or anyone associating with them from any street, sidewalk, park, and/or event that takes place within the City's jurisdiction;

2. Harassing, intimidating, threatening, or otherwise attempting to chill the exercise of the constitutionally protected free speech rights of AAOR, its Members, or anyone associating with them, while [they] are engaged in such exercise; or

3. Unreasonably restricting the time, place, and especially the manner of speech of AAOR, its Members, or anyone associating with them, particularly when AAOR, its Members, and/or anyone associating with them are using sound-amplifying equipment.

Mot. for Preliminary Injunction (doc. 17) at 9–10.

The parties appeared by telephone for a hearing on this motion on October 8, 2020. Based on the evidence submitted before hearing and additional argument presented at the hearing, the Court denied the motion on the record. Doc. 44.

## DISCUSSION

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v.*

*Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008).   A plaintiff seeking a preliminary injunction generally must show that: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest.  *Id.* at 20 (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction).

The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test.  *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).  Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met."  *Id.* at 1132.  Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest."  *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

Plaintiffs argue that they can establish a likelihood of success on their First Amendment retaliation claim because they can "demonstrate a pattern of DPS attempts to chill Plaintiffs' exercise of their free speech rights under color of law by enforcing the [Sound] Ordinance against Plaintiffs."  Mot. Prelim. Injunction (doc.17)

at 18.  They argue that the Sound Ordinance is unconstitutional because it is overbroad, vague, and includes content-based and speaker-based restrictions.  *Id.*

The Court will not address plaintiffs' constitutional challenge to the Sound Ordinance here, however, because defendants made no effort to defend its constitutionality.  Instead, defendants responded that the City "is not enforcing the [Sound] [O]rdinance" because "an update to the ordinance is underway." Bartholomew Decl. (doc. 22) at 2.  All DPS officers have been advised not to enforce the Sound Ordinance.  Hamilton Decl. (doc. 28) at 2.  Defendants also responded that the City is using ORS 166.025(1)(b), a state law, to investigate and potentially enforce against plaintiffs "when the noise from their sound-amplifying equipment was unreasonable."  Resp. (19) at 6-7.  Under ORS 166.025, a person "commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person . . . makes unreasonable noise."  ORS 166.025(1), (1)(b).

At the preliminary injunction hearing, defense counsel confirmed that the City is revising the Sound Ordinance and will not rely on it during the revision process. Defense counsel conceded that he did not think that the current Sound Ordinance is constitutional.  He also reported that he had emailed plaintiffs' counsel proposed amendments on May 5, 2020, and plaintiffs' counsel responded with objections to aspects of the revisions on May 15, 2020.  Since then, defense counsel has been working with the City Attorney to develop a constitutional, amended ordinance.  He also reported that he told plaintiffs' counsel that the City is not enforcing the Sound

Ordinance, wants to work with plaintiffs' counsel on the revisions, and that the amended Sound Ordinance would not go into effect until plaintiffs' counsel had an opportunity to review it and respond.

Based on defense counsel's concession that the Sound Ordinance was unconstitutional, plaintiffs have demonstrated a likelihood of success on the merits. Plaintiffs assert that, "[u]nless the Court (1) declares the Sound Ordinance unconstitutional due to its very apparent flaws and (2) enjoins the City from enforcing the Ordinance, Plaintiffs will face continued interference with their constitutionally protected free speech rights." Mot. Prelim. Injunction at 18.

Generally, if plaintiffs establish a likelihood of success on a First Amendment retaliation claim, they are entitled to a presumption of irreparable harm. *See e.g.*, *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) ("A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief.") (internal quotation marks omitted). This presumption applies even though the City claims that it has never actually enforced the Sound Ordinance against plaintiffs. *See Cuviello*, 944 F.3d at 833 (a "chill on . . . free speech rights—even if it results from a threat of enforcement rather than actual enforcement—constitutes irreparable harm"). Here, plaintiffs have demonstrated that they *were* harmed by DPS officers' reliance on the Sound Ordinance. But plaintiffs' assertion that they are likely to experience this kind of harm in the *future* without a Court order prohibiting the City from enforcing the Sound Ordinance is undermined by the City's decision stop enforcing it during the revision process. Given the City's assertion that it is not enforcing the Sound

Ordinance and defense counsel's representation that any revised ordinance will not go into effect until plaintiffs have a chance to respond to and challenge the amendments, the Court cannot find that plaintiffs are likely to suffer irreparable harm from the enforcement of the Sound Ordinance in the absence of a preliminary injunction. *See Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely *in the absence of an injunction.*" (original emphasis omitted and emphasis added)).

Plaintiffs assert that the City's plan to enforce ORS 166.025(1)(b) against AAOR members also presents constitutional "problems necessitating injunctive relief." Reply at 7. They argue that, because the statute lacks a "standard of reasonableness," it (1) may be applied to regulate the content of speech, *id.* at 10-11, (2) provides discretion to officers that would allow them to use the statute as a pretext to curb AAOR's protected speech, *id.* at 11-12, and (3) fails to provide ordinary people with adequate notice of the conduct that it proscribes, *id.* at 13-14. Plaintiffs ask the court to "preliminarily enjoin Defendants from enforcing the Sound Ordinance, or ORS 166.025(1)(b), against AAOR." *Id.* at 20.

Although courts have broad discretion to consider arguments raised for the first time in a reply, the Court will not exercise its discretion to do so here. *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008). Plaintiffs' reply does more than raise new arguments, it raises new allegations not contained in the FAC and requests supplemental injunctive relief not sought in the FAC or motion for preliminary injunction. *See White v. City of Sparks*, 85 F. App'x 618 (9th Cir. 2004)

Page 11 – OPINION AND ORDER

(affirming district court's order denying motion for preliminary injunction and declining to grant supplemental preliminary injunctive relief requested for the first time in the plaintiff's reply). The FAC does not allege a constitutional challenge to ORS 166.025(1)(b), seek injunctive relief against its enforcement, or even mention the state law. *See Pac. Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015) ("There must be a relationship between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant relief of the same character as that which may be granted finally."). Similarly, plaintiffs' Motion for Preliminary Injunction focused on the constitutionality of the Sound Ordinance, plaintiffs' likelihood of success in proving that defendants engaged in a pattern of violating their free speech rights by enforcing the Sound Ordinance, and the risk of harm posed by defendants' reliance on the ordinance.

At the hearing, plaintiffs' counsel argued that the FAC did not mention the disorderly conduct statute because it did not need to be addressed at the time that the FAC was filed. He asserted that statute was not brought up until defendants filed their opposition brief. Counsel is correct that disorderly conduct did not appear in the parties' legal arguments until defendants' response. But plaintiffs' own evidence shows that plaintiffs and their counsel were aware that the City believed that the disorderly conduct statute provided grounds to investigate and regulate

plaintiffs' activities when plaintiffs filed this action, and certainly by the time they filed this motion.

Although there is some evidence and argument before the Court concerning the City's use of the disorderly conduct statute, both parties gave short shrift to these issues and do not respond directly to the others' arguments. This matter is better suited for resolution following a supplemental preliminary injunction motion and a record focused on the statute and its enforcement. In sum, if plaintiffs want to challenge the City's use of the disorderly conduct statute to investigate and regulate plaintiffs' activities, they may do so by filing an amended complaint and supplemental preliminary injunction motion seeking an order against the law's enforcement, which the Court will consider on an expedited basis.

Finally, at the hearing the parties indicated that they would be open to stipulating to terms regulating plaintiffs' activities during this litigation. In particular, they noted that they had been negotiating possible standards for determining a permissible volume for plaintiffs' amplified preaching but had not yet agreed on a unit of measurement. The Court will set a status conference to discuss referring the parties to a judicial settlement conference to help facilitate these negotiations and those concerning revisions to the Sound Ordinance.

## CONCLUSION

For the reasons above, plaintiffs' Motion for Preliminary Injunction (doc. 17) is DENIED for failure to demonstrate a likelihood of irreparable harm. Plaintiff shall

have leave to file an Amended Complaint and a supplemental preliminary injunction

motion.  The parties shall appear for a telephonic status conference on March 4, 2021

At 1:30 p.m.

IT IS SO ORDERED.

Dated this <u>12th</u> day of February 2021.


<u>        /s/Ann Aiken        </u>

Ann Aiken
United States District Judge