Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
1850 45th Ave. NE, Suite 33
Salem, OR 97305
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiffs
ABOLISH ABORTION OREGON et al.

# UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF OREGON

### MEDFORD DIVISION

| | |
|---|---|
| ABOLISH ABORTION OREGON, An Unincorporated Association; MASON GOODKNIGHT, An Individual; SHAWN KELLIM, An Individual; RYAN CLARK, An Individual; MARK MAYBERRY, An Individual, and also the Guardian Ad Litem for ROBBY MAYBERRY and RICKY MAYBERRY; and LORI MAYBERRY, An Individual, | Case No.: 1:20-CV-00484-CL **SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, ECONOMIC DAMAGES, NON-ECONOMIC, AND PUNITIVE DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]** **DEMAND FOR JURY TRIAL** |

                                        Plaintiffs,

v.

CITY OF GRANTS PASS, A
Municipality; and DOES 1 THROUGH
50, Inclusive,

                                        Defendants,

And

STATE OF OREGON,

                                        Real Party in Interest

Plaintiffs ABOLISH ABORTION OREGON ("AAOR"); MASON GOODKNIGHT ("GOODKNIGHT"); SHAWN KELLIM ("KELLIM"); RYAN CLARK ("CLARK"); MARK MAYBERRY ("MAYBERRY"), both individually and in his capacity as guardian ad litem for ROBBY MAYBERRY ("ROBBY M.") and RICKY MAYBERRY ("RICKY M."); and LORI MAYBERRY ("LORI M.," and collectively with GOODKNIGHT, KELLIM, CLARK, MAYBERRY, ROBBY M., and RICKY M. "Plaintiffs") hereby allege as follows:

## PARTIES

1.    Plaintiffs are, and at all times herein were, U.S. citizens and residents of Oregon.

2.    Plaintiff AAOR is, and at all times herein was, an unincorporated association based in Roseburg, Oregon, whose members consist of Christians from throughout Oregon who are dedicated to calling the public's attention to the horrors of abortion and calling on legislators to abolish and criminalize the inhumane practice.

3.    Plaintiff GOODKNIGHT is, and at all times herein was, a resident of Roseburg, Oregon, and the coordinator of AAOR's evangelism outings.

4.    Plaintiff KELLIM is, and at all times herein was, a resident of Glide, Oregon, and an active member of AAOR.

5.    Plaintiff CLARK is, and at all times herein was, a resident of Grants Pass, Oregon, and an active member of AAOR.

6.    Plaintiff MAYBERRY is, and at all times herein was, a resident of Riddle, Oregon, and an active member of AAOR.

7.    Plaintiff LORI M. is, and at all times herein was, a resident of Riddle, Oregon, the wife of Plaintiff MAYBERRY, and an active member of AAOR.

8.    Plaintiff ROBBY M. is, and at all times herein was, a resident of Riddle, Oregon, the teen-aged son of both MAYBERRY and LORI M., and an active member of AAOR.

9.    Plaintiff RICKY M. is, and at all times herein was, a resident of Riddle, Oregon, the teen-aged son of both MAYBERRY and LORI M., and an active member of AAOR.

10.    Defendant CITY OF GRANTS PASS (the "CITY") is, and at all times herein was, a public body as defined in ORS 30.260(4)(b) and 174.109.

11.    The STATE OF OREGON (the "STATE") is named as a real party in interest in this proceeding pursuant to ORS 28.110, as the herein Complaint seeks declaratory relief concerning the constitutionality of one of the STATE's statutes. The STATE is named as a real party in interest to avoid any potential prejudice concerning any declaratory relief that this Court may grant.

12.    The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiffs, who thus sue said Defendants under such fictitious names.  Each of the Defendants designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiffs thereby, as herein alleged.  Plaintiffs will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

13.    Plaintiffs refer to and hereby incorporate the allegations of Paragraphs 1 through 12 into this Paragraph as if fully set forth herein.

14.    This Court has jurisdiction over the Defendants pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the Constitution and laws of the United States.

## VENUE

15.     Plaintiffs refer to and hereby incorporate the allegations of Paragraphs 1 through 14 into this Paragraph as if fully set forth herein.

16.     Venue is proper in the Court's Medford Division because the incidents giving rise to this Complaint occurred in the County of Josephine and all Defendants are located in, employed in, or residents of, the County of Josephine.

## GENERAL ALLEGATIONS

17.     Plaintiff refers to and hereby incorporates by reference the allegations set forth in Paragraphs 1 through 16 into this Paragraph as if fully set forth herein.

18.     AAOR is an organization comprised of Christian evangelists and anti-abortion activists who travel around Oregon to share the gospel of Jesus Christ and to call for the abolition and criminalization of abortion – which they believe to be murder – throughout the United States.  AAOR's members communicate their message through a variety of methods, including open-air preaching, passing out tracts, holding up signs, and engaging willing individuals in conversation.

19.     Because of the large crowds that they draw, AAOR's members frequently attend events that take place in Grants Pass, including, but not limited to, First Friday (a monthly celebration of the arts), the Saturday Growers' Market (the "Growers' Market"), and the annual Boatnik festival.  At these events, members of AAOR take turns open-air preaching – sometimes using electronic sound-amplification devices ("amplifiers"), sometimes without – while others hold anti-abortion signs and/or pass out gospel tracts.  Some AAOR members' signs merely contain words, while others feature graphic images of aborted children.

20.     AAOR's members also regularly preach their anti-abortion message outside the Planned Parenthood clinic located at 180 NW Franklin Blvd. ("Planned Parenthood") in Grants Pass.

21.    The CITY's law enforcement arm, the Department of Public Safety ("DPS"), has engaged in a consistent pattern of harassment aimed at silencing AAOR's members that dates back to at least 2017.  This pattern includes, but is by no means limited to, the following occurrences:

a.  On June 23, 2017, Plaintiff GOODKNIGHT was present at a concert in Grants Pass.  While another member of AAOR was preaching, a DPS officer approached GOODKNIGHT, who is employed by the Douglas County Sheriff's Office ("DCSO") in Roseburg, and asked if GOODKNIGHT knew Brian Sanders ("Sanders"), who was DCSO's second-highest-ranking officer at the time.  GOODKNIGHT said he did, and the DPS officer threatened to tell Sanders what GOODKNIGHT was up to – clearly implying that he intended to get GOODKNIGHT in trouble with, if not fired by, DCSO if he did not cease his evangelism activities immediately.

b.  On October 17, 2018, Plaintiffs GOODKNIGHT and MAYBERRY took turns preaching with a small amplifier at the Growers' Market at the corner of 4th and F streets in Grants Pass. GOODKNIGHT and MAYBERRY used the amplifier for two reasons: 1) They had to compete with a great deal of ambient noise – specifically, loud music and cars passing by on the street – and 2) so they could communicate in normal, civilized tones without having to raise their voices.  They kept the amplifier's volume at roughly 50 percent – loud enough for those attending the Growers' Market to hear, but not so loud that it could be heard beyond half a block away.  They in no way inhibited the merchants at the

Growers' Market from conducting their business.

Still, in response to complaints from individuals who presumably found the AAOR members' message offensive, two DPS officers, Will Taylor and Jonah Kopp, approached GOODKNIGHT and informed him that it was against local law to use amplification to preach at any time or place other than First Fridays.

AAOR's attorney sent a letter to Defendant CITY's counsel explaining why the actions of officers Taylor and Kopp violated the rights of AAOR and its members under both the U.S. Constitution's First Amendment and Article I, § 8 of the Oregon Constitution.  A copy of that letter is attached hereto as **Exhibit "A."**  Despite receiving that letter – something the CITY's counsel acknowledged in a city council meeting – the CITY took no action to prohibit further trampling of the constitutionally protected free speech rights of AAOR and its members.

c.  On May 3, 2019, AAOR members attended a First Friday event. Plaintiff GOODKNIGHT used an amplifier while preaching.  DPS informed GOODKNIGHT at that time that the CITY had changed its policy and was no longer allowing speakers to use amplifiers even at First Fridays.  In response, AAOR members stopped using the amplifier and started using non-electronic plastic cones. Initially, the DPS officers allowed the use of the cones, but then changed their minds on that, too.

d.  On May 4, 2019, AAOR members were again harassed by DPS officers following complaints from merchants and/or others at the Growers' Market.  Plaintiff ROBBY M., a relatively quiet teen-

ager who was merely passing out tracts, was accused of soliciting at the Growers' Market and escorted out of the Market by DPS officers.

e. On May 25-26, 2019, AAOR members attended the CITY's annual Boatnik festival. Again, members took turns using an amplifier to ensure their message would be heard. Repeatedly, DPS officers threatened them – Plaintiffs MAYBERRY and KELLIM in particular – with citations if they did not stop. This was the first time in roughly a decade of attending Boatnik that AAOR's members had been harassed by police over their use of amplification. Among the DPS officers who made these threats were Josh Nieminen and Max Anuschat.

f. On June 17, 2019, Plaintiff RICKY M., then aged 14, his mother, Plaintiff LORI M., and other AAOR members were engaged in constitutionally protected free speech activities outside Planned Parenthood. RICKY M. was sitting in a lawn chair on the sidewalk, holding an anti-abortion sign, when Officer Timothy Artoff ("Officer Artoff") approached and cited RICKY M. for "obstructing traffic" in violation of Grants Pass Mun. Code § 5.36.010, angrily telling RICKY M., "You've been warned." It was the first interaction RICKY M. had ever had with Officer Artoff. A copy of RICKY M.'s citation is attached hereto as **Exhibit "B."**

Furthermore, when he cited RICKY M., Officer Artoff falsely claimed that RICKY M. had been standing in the street, in a handicapped parking spot near the curb. RICKY M. had, in fact,

been sitting in a lawn chair on the sidewalk at the time.  It was
RICKY M.'s brother, ROBBY M., who had been standing in the
street.  Officer Artoff's citation of RICKY M. was merely a pretext
to silence him and other AAOR members from speaking out
against abortion, and Officer Artoff targeted a 14-year-old kid to
do it.  The charge against RICKY M. was ultimately dismissed,
but not before RICKY M. and his family had to make a trip to
Grants Pass to contest the ticket and spend more than two months
worrying about his trial.

g. On July 25, 2019, Plaintiff KELLIM was preaching on the
sidewalk outside Planned Parenthood.  Three DPS officers –
Officer Artoff, Jim Hamilton ("Officer Hamilton"), and Jason
McGinnis (Officer "McGinnis") all showed up to tell KELLIM to
leave.  This was not a situation where three police officers needed
to be present to de-escalate a situation; the officers targeted
KELLIM to intimidate him into silence.

h.  On August 8, 2019, Plaintiff KELLIM was preaching outside
Planned Parenthood when Officer McGinnis and DPS Officer Jeff
Hattersley harassed and threatened to cite KELLIM for disturbing
the peace and disorderly conduct for using an amplifier.

i. On August 15, 2019, Plaintiff KELLIM was preaching outside
Planned Parenthood again when Officer Artoff and Officer
McGinnis cited him for using an amplifier.  A copy of the citation
is attached hereto as **Exhibit "C."**  The citation charges KELLIM
with disorderly conduct in the first degree, which concerns making
a false report concerning an alleged fire, explosion, catastrophe,

hazardous substance, or other emergency.  *See* ORS 166.023.  The County of Josephine did not pursue the charge against KELLIM.

j.  In early September 2019, Plaintiff LORI M. and several other AAOR members went to share their message on the sidewalk outside Planned Parenthood.  Officer Hamilton, DPS' second-highest ranking officer, took it upon himself to talk to the AAOR members, LORI M. in particular, and make sure they were not using amplification.  Officer Hamilton asserted his position as DPS' second-highest ranking officer to intimidate LORI M. and her fellow AAOR members into silence.

k.  On September 15, 2019, Plaintiff KELLIM was preaching with an amplifier outside Planned Parenthood again when Officer McGinnis and DPS Officer Jeff Craven threatened to cite him for disturbing the peace.

l.  On January 2, 2020, Plaintiff CLARK was preaching without any amplification outside Planned Parenthood.  His voice was slightly raised, but he was not shouting.  DPS Officer Jennings Stewart ("Officer Stewart") still came up and told CLARK he was preaching too loudly and ordered him to stop.  Officer Stewart further stated that if DPS continued to receive complaints, CLARK and his fellow AAOR members would be cited for trespass and prohibited from using the public sidewalk outside Planned Parenthood.

m. On February 28, 2020, Plaintiff GOODKNIGHT was preaching with an amplifier outside Planned Parenthood.  DPS Officer Jason Peil of the DPS dishonestly told GOODKNIGHT that a local

ordinance (*see* Paragraph 31.c below ) prohibited him from using amplification without a permit.  When GOODKNIGHT asked Officer Peil to show him the ordinance, Officer Peil refused. Officer Peil insisted that GOODKNIGHT was operating his amplifier at an unreasonable volume, and when GOODKNIGHT asked what volume would be reasonable, Officer Peil did not give GOODKNIGHT a straight answer with which GOODKNIGHT could comply.  Officer Peil then became visibly frustrated and threatened to arrest GOODKNIGHT for disorderly conduct because GOODKNIGHT was allegedly "causing public alarm."

n. On March 6, 2020, Plaintiff CLARK was preaching with amplification outside Planned Parenthood.  DPS Officer Lucas Six arrived on the scene.  Although Officer Six admitted that Defendant CITY's relevant noise ordinance (see Paragraphs 32-34, below) was subjective and that CLARK was preaching at a volume that was not necessarily unreasonable, Officer Six still ordered CLARK to stop preaching with amplification.

Later that same day, on the south corner of G Street at the intersection of 6th and G streets, CLARK was engaging with someone in civil, peaceful conversation when Officer Artoff arrived in response to a complaint.  Officer Artoff told CLARK to stop talking and move away.  When another DPS officer, Mike Miner, advised Officer Artoff that CLARK was not breaking any laws or ordinances, Officer Artoff allowed CLARK to stay.

o. On March 12, 2020, Plaintiff CLARK was again preaching outside Planned Parenthood.  DPS Officer Derek Evans arrived on the

scene and ordered CLARK to stop preaching.  When CLARK tried
to press Officer Evans about the noise ordinance, Officer Evans
made clear he did not want to discuss it.  Officer Evans then
threatened to arrest CLARK if he did not stop preaching.

p.  On April 18, 2020, Cpl. Moor of DPS harassed GOODKNIGHT
while GOODKNIGHT was preaching without an amplifier at the
Growers' Market.  GOODKNIGHT has a naturally loud, booming
voice, and he preached without an amplifier that day because he
wanted to avoid trouble with the Grants Pass police.  When
GOODKNIGHT asserted that Cpl. Moor was violating his First
Amendment rights, Cpl. Moor threatened to cite GOODKNIGHT
for disorderly conduct if he did not stop preaching.
GOODKNIGHT filed a complaint with DPS against Cpl. Moor on
April 24, 2020.  A comply of the complaint is attached hereto as
**Exhibit "D."**

q.  On July 16, 2020, CLARK was preaching on the public sidewalk
outside Planned Parenthood when Officer Artoff showed up and
threatened to arrest him for disorderly conduct.  This was not the
first time CLARK or other members of AAOR had faced threats or
other harassment from Officer Artoff while engaging in free
speech activities.  Because of this, CLARK felt compelled to file a
complaint with DPS.  A copy of that complaint is attached hereto
as **Exhibit "E."**

22.  On July 25, 2020, KELLIM was preaching and passing out tracts
on the sidewalk outside the Growers' Market when Officer Stewart
approached and asked him to turn down his amplifier, which

KELLIM agreed to do.  Officer Stewart asserted that KELLIM's "disorderly noise" was adversely impacting the businesses located nearest to me – even though, as KELLIM observed, merchants at the Growers' Market were still able to transact business with customers – and threatened to cite KELLIM for disorderly conduct if he continued.  When KELLIM pointed out that musicians in the vicinity were likewise using amplification, Officer Stewart asserted that the musicians were operating their amplifiers at what he considered an acceptable level and stated something about a "Doppler effect," insinuating that KELLIM's speech, and no one else's, was the one causing problems.  Because KELLIM was singled out for disparate treatment, he felt complained to file a complaint with DPS.  A copy of that complaint is attached hereto as **Exhibit "F."**

23.    A timeline with links to videos of several of the aforementioned incidents is attached hereto as **Exhibit "G."**

24.    In every instance cited above, Plaintiffs preached their message in a traditional public forum.

**SOLE CAUSE OF ACTION:**
**<u>DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]</u>**
**Against All Defendants**

25.    Plaintiffs refer to and hereby incorporate by reference the allegations set forth in Paragraphs 1 through 24 into this Paragraph as if fully set forth herein.

26.    Under 42 U.S.C. § 1983, anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for redress[.]"
A municipality, such as Defendant CITY, can be held liable for civil rights
violations where action pursuant to official municipal policy of some nature causes
a constitutional tort.

27.    The U.S. Constitution's First Amendment, as applied to states through
the Fourteenth Amendment, prohibits states from infringing on individuals'
freedoms of speech and religion.  Under the Fourteenth Amendment's Equal
Protection Clause, meanwhile, no state may "deprive any person of life, *liberty*, or
property without due process of law; nor deny to any person within its jurisdiction
equal protection of the laws."  U.S. Const. amend. XIV, § 1 (emphasis added).

28.    Acting under color of state law, via threats of enforcing both Grants
Pass Mun. Code § 5.12.110 and ORS 166.025(1)(b), Defendant CITY's police
officers have intentionally deprived Plaintiffs of their constitutionally protected
liberties of free speech and religion by engaging in a consistent pattern of
harassment in order to silence them.  Defendant CITY, acting by and through its
police officers, was substantially motivated by a desire to prevent Plaintiffs from
exercising their constitutionally protected free speech and religious rights and used
their positions as officers of the law toward that end.  The actions of Defendant
CITY's police make abundantly clear that CITY has a custom, policy, and practice
of trying to silence Christians who preach their views openly in the public square.

## REQUEST FOR DECLARATORY RELIEF

29.    Plaintiffs refer to and hereby incorporate by reference the allegations
set forth in Paragraphs 1 through 28 into this Paragraph as if fully set forth herein.

30.    In targeting and harassing Plaintiffs for exercising their freedoms of
speech and religion, Defendants presumably aim to enforce Grants Pass Mun.
Code § 5.12.110 (the "Sound Ordinance" or the "Ordinance," or "Mun. Code"

when cited).  Subsection (A) of the Sound Ordinance states, "No person may make, assist in making, continue or cause to be making any loud, disturbing, or unnecessary noise which either ***annoys, disturbs, injures or endangers the comfort***, repose, health, safety ***or peace of others***" (emphasis added).  Section (B)(11) of the Sound Ordinance defines "loud, disturbing, and unnecessary noises" to include "[t]he use or operation of … any sound-amplifying device so loudly as to disturb persons in the vicinity thereof or in such a manner that renders the use thereof a nuisance."

     31.    The Sound Ordinance is unconstitutional on its face, as it is overbroad, vague, and contains content- and speaker-based restrictions:

        a.  The Sound Ordinance is overbroad because it is not narrowly tailored to achieve Defendant CITY's significant government interest in protecting its citizens from unwelcome noise, and therefore infringes on far more favored expressive activity in a traditional public forum than is necessary to achieve the government's purposes: All someone has to do is complain that a speaker using an amplifier – or even one who is not, as happened with Plaintiffs GOODKNIGHT and CLARK – is annoying or disturbing him or her to get a police officer to come and use the threat of a citation, if not the issuance of a citation, to silence the speaker.  Moreover, it may not even be the volume of a speaker's speech, but its content, that the complainer finds disturbing.  The First Amendment exists in part to protect unpopular speech, and the Sound Ordinance gives the CITY's police officers far too much power to shut it down.

b. The Sound Ordinance is also vague, as it invites arbitrary and discriminatory enforcement: The Ordinance provides no decibel level that speakers using amplifiers cannot exceed, making even good-faith attempts to comply with the Ordinance punishable by law.  Because the Ordinance provides no standards or guidelines to follow, it gives Defendant CITY's police officers virtually unrestrained power to charge speakers with violating the law.

c. The Sound Ordinance contains a content-based restriction, as it only allows the use of sound-amplifying equipment "for the broadcast or amplification of *music, news, speeches, or general entertainment* as a part of a national, state, or City event, public festivals or outstanding events of a noncommercial nature," and then only after the organizer of the relevant event obtains a permit. Mun. Code § 5.12.110(B)(11) (emphasis added).  Even assuming *arguendo* that Plaintiffs' activities fall into the category of "speeches," the language cited above makes clear that individuals can only engage in speech using amplification as part of organized events and renders the exercise of protected rights subject to Defendant CITY's approval.  The U.S. Constitution prohibits this.

d. The Sound Ordinance also contains a speaker-based restriction, as it shows a preference for organizers of events as opposed to everyday individuals with a message to speak.

32.    In addition, Defendant CITY's police officers have threatened to cite Plaintiffs GOODKNIGHT, CLARK, and KELLIM for second-degree disorderly conduct under ORS 166.025(1)(b).  *See* Exs. "D"-"F."  Under ORS 166.025(1)(b), "[a] person commits the crime of disorderly conduct in the second degree if, with

intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person … [m]akes unreasonable noise."

33.    ORS 166.025(1)(b) is unconstitutional, both on its face and as applied to Plaintiffs, for the following reasons:

    a.  Nothing in the text of ORS 166.025(1)(b) defines what makes a noise "unreasonable": The statute contains no standards concerning volume or duration that sound cannot exceed, nor is any allowance made for various circumstances such as the time, place, and manner in which sound is communicated.  ORS 166.025(1)(b) thus does not communicate to individuals what conduct the statute prohibits.  Entirely too much discretion is afforded to Defendant CITY's police officers to determine whether a speaker is "making unreasonable noise,."  ORS 166.025(1)(b) thus lends itself to arbitrary and discriminatory enforcement.

    b.  Furthermore, the content of speech may cause annoyance or alarm. Because of this, there is a substantial risk that Defendant CITY's police officers will enforce ORS 166.025(1)(b) in a manner aimed at suppressing the expression of ideas that hearers deem offensive, as CITY's police officers have already threatened to do.  CITY's threats to arrest AAOR members for disorderly conduct are aimed at chilling AAOR members' exercise of their right of free speech, thereby making ORS 166.025(1)(b) unconstitutional as applied to Plaintiffs.

34.    Based on the foregoing, Plaintiffs request a declaration from the Court stating that both the Sound Ordinance and ORS 166.025(1)(b) are unconstitutional, both facially and as applied to Plaintiffs.

## **REQUEST FOR INJUNCTIVE RELIEF**

35.     Plaintiffs refer to and hereby incorporate by reference the allegations set forth in Paragraphs 1 through 34 into this Paragraph as if fully set forth herein.

36.     Because Defendant CITY's efforts to silence Plaintiffs have continued unabated since at least 2017, Plaintiffs hereby request that the Court preliminarily and permanently enjoin all Defendants from enforcing both the Sound Ordinance and ORS 166.025(1)(b) against Plaintiffs in a manner that unconstitutionally abridges Plaintiffs' First Amendment freedoms.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

### **ON ALL CAUSES OF ACTION:**

1.     For declaratory and injunctive relief, as stated *supra*;

2.     For economic damages against all Defendants in an amount according to proof at trial;

3.     For non-economic damages against all Defendants in the amount of $400,000 ($50,000 per Plaintiff);

4.     For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

5.     For such other and further relief as the Court may deem proper.


Dated: March 5, 2021                  PACIFIC JUSTICE INSTITUTE


                                              __/s/ *RAY D. HACKE*_____
                                              Ray D. Hacke
                                              Attorney for Plaintiffs
                                              ABOLISH ABORTION OREGON *et al.*

## PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon.  I am over the age of eighteen and not a party to the within action; my business address is 1850 45th Ave., Suite 33, Salem, OR 97305.

On or about March 5, 2021, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, ECONOMIC DAMAGES, NON-ECONOMIC, AND PUNITIVE DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**

## PLEASE SEE ATTACHED SERVICE LIST

__X__ BY MAIL:  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same date with postage thereon fully prepaid at Salem, Oregon in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____BY PERSONAL SERVICE:  I caused such envelope to be delivered by hand to the office of the addressee(s).

_____BY FACSIMILE TRANSMISSION:  The facsimile machine I used complied with California Rules of Court 2003(3) and no error was reported by the machine.  Pursuant to rule 2005(i), I caused the machine to print a record of the transmission, a copy of which is attached to this proof of service.

_____(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__(Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 5, 2021, at Salem, Oregon.

*/s/ RAY D. HACKE*_____
Ray D. Hacke

## <u>SERVICE LIST</u>

Robert E. Franz, Jr.
Attorney For Defendant
CITY OF GRANTS PASS
P.O. Box 62
Springfield, OR 97477

Ellen Rosenblum
Oregon Attorney General
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301

# EXHIBIT "A"

**PACIFIC JUSTICE**
**INSTITUTE**

<span>SACRAMENTO, CA   SALEM, OR   SAN JOSE, CA   SANTA ANA, CA   SEATTLE, WA</span>

January 10, 2019

**SENT VIA REGULAR MAIL AND E-MAIL**
Mark Bartholomew
City Attorney
City of Grants Pass
101 Northwest A St.
Grants Pass, OR 97304
mbartholomew@grantspassoregon.gov

>    **Re: Abolish Abortion Oregon**
>    **Use of Sound-Amplifying Equipment at Farmers' Market**
>    **Violation of First Amendment Rights**

Dear Mr. Bartholomew:

The Pacific Justice Institute ("PJI") is a non-profit law firm whose mission includes defending religious liberty and related First Amendment-protected freedoms, including and especially the freedom of speech. Please be advised that Abolish Abortion Oregon ("AAO") has asked PJI to draft this letter of opinion addressing whether members of the organization have the right to use sound-amplifying equipment to share their message at public events in Grants Pass.

**I. Facts**
AAO is an unincorporated organization comprised of Christians dedicated to calling the public's attention to the horrors of abortion and calling on legislators to not only abolish the practice, but criminalize it. On the morning of Saturday, October 17, 2018, several AAO members traveled from Douglas County to Grants Pass to share their message at the weekly farmers' market at 4th and F streets. After arriving, four AAO members stood on street corners holding signs featuring aborted babies while two others, Mason Goodknight and Mark Mayberry, took turns preaching anti-abortion and Christian gospel messages from blocked-off portions of the street, which essentially served as extensions of nearby sidewalks. When taking their respective turns to preach, Mr. Goodknight and Mr. Mayberry wore a headset with a microphone attached to a small amplifier that fit inside a fanny pack. Mr. Goodknight and Mr. Mayberry used the amplifier in part because they had to compete with ambient noise – specifically, loud music and cars passing by on the street. The amplifier's volume was at around 50 percent – loud enough for people attending the farmers' market to hear the preachers' message, but not so loud that it could be heard more than roughly half a block away.

At some point while Mr. Goodknight was preaching, merchants complained to the Grants Pass police that his preaching was too loud and that it was interfering with their ability to conduct business. Mr. Goodknight believes that "being too loud" was actually an excuse

1

for people uncomfortable with the content of Mr. Goodknight's message to silence him. Regardless, two Grants Pass police officers, Will Taylor and Jonah Kopp, accosted Mr. Goodknight soon after and told him that it was against local law for him to use an amplifier to preach his message. Not wanting to cause further problems, Mr. Goodknight complied with the officers' demand that he turn off his amplifier. Mr. Goodknight continued to preach after the officers left the scene, but though he has a loud, booming voice, Mr. Goodknight was able to reach far fewer listeners than he would have had he been able to use his amplifier.

## II. Legal Analysis

The U.S. Constitution's First Amendment protects individuals' freedom of speech as well as their free exercise of their religious beliefs. U.S. Const. amend. I. The First Amendment has been made applicable to state and local governments through the Fourteenth Amendment's Due Process Clause. *Menotti v. City of Seattle*, 409 F.3d 1113, 1140 n. 51 (9th Cir. 2005). Furthermore, the Oregon Constitution "prohibits state actors from 'restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever.'" *Eagle Point Educ. Assn./SOBC/OEA v. Jackson City Sch. Dist. No. 9*, 880 F.3d 1097, 1108 (9th Cir. 2018) [quoting Or. Const. art. I, § 8].

### A. Mr. Goodknight and His Fellow Abolitionists Conducted Their Speech-Related Activities in a Traditional Public Forum.

The U.S. Supreme Court "has adopted a forum analysis to determine when 'the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes.'" *Bench Billboard Co. v. City of Toledo*, 690 F. Supp. 2d 651, 662 (N.D. Ohio 2010) [quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)]. The Supreme Court recognizes the existence of several different types of forums, including traditional public forums, designated public forums, and non-public forums. *Id.* [quoting *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45-46 (1983)].

For purposes of this discussion, it is unnecessary to explain in detail the differences between the different types of forums; what matters is that ***"[s]treets, sidewalks***, and parks[ ] are considered, without more, to be 'public forums.'" *U.S. v. Kokinda*, 497 U.S. 720, 742 (1990) (Brennan, J., dissenting) (emphasis added) [quoting *U.S. v. Grace*, 461 U.S. 171, 177 (1983)]. As public sidewalks are "a prototypical example of a traditional public forum," speech on public sidewalks ***receives the utmost protection under the First Amendment***. *Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357, 377 (1997) (emphasis added); *see also Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) [quoting *Frisby v. Schultz*, 487 U.S. 474, 480 (1988)]. AAO was thus freer to conduct its anti-abortion activities on the streets and sidewalks near the farmers' market than perhaps any other location in Grants Pass.

Although cities have "a strong interest in ensuring public safety and order ... on public streets and sidewalks," that interest alone is insufficient to validate a content-based regulation of speech in a traditional public forum. *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 768 (1994). A city must show that the regulated communicative activity endangers the city's

interest in ensuring order. *Kuba v. 1-A Agric. Assn.*, 387 F.3d 850, 859 (9th Cir. 2004); *see also Edwards v. City of Santa Barbara*, 883 F. Supp. 1379, 1392-93 (9th Cir. 1995) (hereinafter *Edwards*) [noting that the "captive audience doctrine," which permits governments to prohibit objectionable speech where a "captive" audience cannot avoid it, "has been applied only sparingly in public fora"]. A city's police officers cannot suppress speech "*simply because its exercise may be 'annoying' to some people*." *Coates v. City of Cincinnati*, 402 U.S. 611, 615-16 (1971) (emphasis added).

It is unclear whether Officers Taylor and Kopp sought to silence AAO – and Mr. Goodknight in particular – due to animus toward anti-abortion activists, Christians, or religion in general. Even assuming *arguendo* that they simply aimed to enforce the law, government actors – Officers Taylor and Kopp included – may not "may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment." *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990). Where a state actor (1) engages in conduct that "would chill or silence a person of 'ordinary firmness' from future First Amendment activities," and (2) "such deterrence was a substantial motivating factor in the [actor's] conduct," the actor violates the First Amendment. *Watson v, City of Vancouver*, 2015 U.S. Dist. LEXIS 31400 at **26-27 (W.D. Wash. 2015). That is what happened here: A person of ordinary firmness is likely to cease First Amendment-protected activities at a given location, and less likely to return to that location to engage in First Amendment-protected activities there, if the person knows there will likely be trouble with the police. In claiming that Mr. Goodknight's use of an amplifier was against the law and demanding that he turn it off accordingly, Officers Taylor and Kopp meant to intimidate him and his fellow AAO members into ceasing their First Amendment-protected speech activities at the farmers' market, thereby violating AAO's First Amendment rights.

### B. Silencing Mr. Goodknight and His Fellow Abolitionists Was Not a Constitutionally Permissible "Time, Place, and Manner" Regulation.

In its defense, the City of Grants Pass (the "City") would presumably assert that its actions in telling Mr. Goodknight to turn off his amplifier were nothing more than the type of "time, place, and manner" regulation that is allowable even in a traditional public forum under *Ward v. Rock Against Racism*, 491 U.S. 781 (1989). To pass constitutional muster, a "time, place, and manner" restriction must (1) be justified without reference to the content of the regulated speech, (2) be narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels for the communication of information. *Ward*, 491 U.S. at 791. The City's actions fail to meet the "narrow tailoring" prong in multiple ways: For one thing, even assuming *arguendo* that the City has a significant interest in ensuring that merchants at the farmers' market can communicate effectively enough with their customers to conduct business, the City cannot show that this interest "could not be achieved less effectively without regulation." *Ward*, 491 U.S. at 799 [quoting *U.S. v. Albertini*, 472 U.S. 675, 689 (1985)]. Indeed, while Mr. Goodknight was preaching, purchasers still communicated what they wanted to buy, merchants still told them how much they owed, and money and goods still changed hands. In other words, transactions would still have occurred whether or not the police stopped Mr. Goodknight from preaching, meaning regulation was entirely unnecessary. Furthermore, any "time, place, and manner" regulation of speech must not be substantially broader than

necessary to achieve the interest the government seeks to promote. *Ward*. 491 U.S. at 800. In this case, the officers' demand that Mr. Goodknight shut off his amplifier was substantially broader than necessary – and was, in fact, unnecessary – because, as stated above, business was still freely conducted at the farmers' market without the regulation.

### C. Grants Pass' "Unnecessary Noise" Ordinance is Unconstitutional for Vagueness and Overbreadth and is a Content- and Speaker-Based Restriction.

Titled "Unnecessary Noise," Grants Pass Mun. Code § 5.12.110(A) reads as follows (emphasis added):

> "No person may make, assist in making, continue or cause to be making any *loud, disturbing,* or unnecessary noise which either annoys, disturbs, injures or endangers the *comfort,* repose, health, safety *or peace of others*."

Subsection (B)(11) (collectively with Mun. Code § 5.12.110(A) the "Ordinance") prohibits "[t]he use or operation of … any sound-amplifying device so loudly as to disturb persons in the vicinity thereof or in such a manner as renders the use thereof a nuisance." The Ordinance further states that the only way an individual can use an amplifier is upon obtaining a permit from the City, and then only for "the broadcast or amplification of music, news, speeches, or general entertainment, as part of a national, state, or City event, public festivals or outstanding events of a noncommercial nature." For the reasons stated below, the Ordinance is unconstitutional on its face:

■ **Vagueness:** "The prohibition against vague criminal statutes serves the dual purposes of 'providing notice, with a reasonable degree of certainty, of the conduct that is prohibited' and 'preventing a judge, jury, *or other law enforcer from exercising uncontrolled discretion in punishing defendants*.'" *State v. Schwartz*, 173 Or. App. 301, 309-10 (2001) [quoting *State v. Chakerian*, 325 Ore. 370, 382 (1997)]. An ordinance "is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if *it invites arbitrary and discriminatory enforcement*." *U.S. v. Adams*, 343 F.3d 1024, 1035 (9th Cir. 2003) (emphasis added). An ordinance invites arbitrary and discriminatory enforcement if *it lacks specific standards or guidelines*, thereby allowing police officers to "pursue their personal predilections" when enforcing the ordinance. *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (emphasis added); *see also Bd. of Airport Commrs. v. Jews for Jesus*, 482 U.S. 569, 576 (1987) [quoting *Lewis v. City of New Orleans*, 415 U.S. 130, 135-36 (1974), which states that a law which "confers on police a virtually unrestrained power to … charge persons with a violation" of the law is unconstitutional because "the opportunity for abuse, especially where a statute has received a virtually open-ended interpretation, is self-evident"]. "The vice of unconstitutional vagueness is further aggravated where, as here, the statute in question operates to *inhibit the exercise of individual freedoms affirmatively protected by the Constitution*." *Cramp v. Bd. of Public Instruction*, 368 U.S. 278, 287 (1961) (emphasis added).

In this case, the Ordinance is vague for several reasons. To begin with, the Ordinance does not define what constitutes a "loud" or "disturbing" noise. What is "loud" depends on the hearer:

What is loud to one person, even when broadcast at a volume that most would consider reasonable, may not be loud enough for someone else to hear. This is especially true when the speaker has to compete with ambient noise such as loud music or passing cars. The word "disturbing" is likewise subjective: When someone speaks openly about controversial topics such as abortion, as AAO's preachers did, there is unquestionably potential for someone who disagrees with the views expressed, or even who simply finds the subject unpleasant, to find the noise disturbing. The Ordinance thus lacks specific standards or guidelines to guide the City's police officers in determining what is "loud" or "disturbing," thereby inviting arbitrary and discriminatory enforcement: All a police officer has to do is decide for himself – as Officers Taylor and Kopp did here – that sounds produced by sound-amplifying equipment are loud and/or disturbing, or be told that the sounds are bothering someone, and they have grounds to silence the speaker.

The Ordinance is like that at issue in *Saia v. New York*, 334 U.S. 558 (1948), in which the U.S. Supreme Court struck down a law forbidding the use of sound amplification devices except with the permission of the local chief of police. The law in *Saia* was not "narrowly drawn to regulate … the volume of sound (the decibels) to which they must be adjusted." *Id.* at 560. The same is true here: The Ordinance makes no reference to any decibel level at all. Such a reference would provide an objective, measurable standard by which a police officer can judge whether a speaker is broadcasting his speech too loudly. Here, Officers Taylor and Kopp were told that Mr. Goodknight's speech was bothering people and told him to turn off his amplifier accordingly. That is precisely the sort of arbitrary and discriminatory enforcement that the Ordinance invites due to its lack of specific standards or guidelines. The Ordinance is thus unconstitutionally vague.

■ **Overbreadth:** "If a law is aimed not at the content of speech but at specific harms or proscribed effects that could be caused by speech, its constitutionality is tested by the breadth of the law or particulars of its application." *State v. Moyer*, 225 Or. App. 81, 102 (2009). "[W]hen overly broad statutory language seems to sweep protected First Amendment expression directly into the scope of a regulation affecting speech, *or indirectly places an undue burden on such protected activity*, free expression can be chilled[.]" *Powell's Books, Inc. v. Myers*, 599 F. Supp. 2d 1226, 1237 (D. Or. 2008) (emphasis added) [quoting *American Booksellers Assn. v. Webb*, 919 F.2d 1493, 1499 (11th Cir. 1990)], rev'd on other grounds, *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202 (9th Cir. 2010). An ordinance which infringes on more traditionally favored expressive activity in traditional public fora than is necessary to achieve the government's purposes is overbroad, and therefore unconstitutional, under the First Amendment. *Edwards*, 883 F. Supp. at 1392-93.

Furthermore, Article I, § 8 of the Oregon Constitution states, "*No law shall be passed restraining the free expression of opinion, or restricting the right to speak*, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right" (emphasis added). Cities may regulate amplified noise, an effect of speech, without violating Article I, § 8. *City of Portland v. Ayers*, 93 Or. App. 731, 735 (1988). However, laws regulating amplified noise violate Article I, § 8 when they are overbroad. *See*, e.g., *City of Eugene v. Lee*, 177 Or. App. 492, 501 (2001) [citing *City of Eugene v. Powlowski*, 116 Or. App. 186 (1992) (striking down an ordinance that "prohibited making 'any unnecessary or

unreasonably loud or harsh sound by means of a horn' except as a 'reasonable warning'" as overbroad in violation of Article I, § 8)].

In *State v. Robertson*, 293 Or. 402 (1982), the Oregon Supreme Court established a framework for analyzing challenges to laws that purportedly infringe on free expression in violation of Article I, § 8. *Moyer*, 348 Or. at 228-29 [citing *State v. Plowman*, 314 Or. 157, 163-64 (1992) (quoting *Robertson*, 293 Or. at 412)]. Under *Robertson*, laws concerning speech or expression are divided into three categories:

> The first *Robertson* category consists of laws that focus on the content of speech or writing or are written in terms directed to the substance of any opinion or any subject of communication. Laws within that category violate Or. Const. art. I, § 8, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 [the year of Oregon's admission to the Union] demonstrably were not intended to reach. The second *Robertson* category consists of laws that focus on forbidden effects, but expressly prohibit expression used to achieve those effects. Laws in that category are analyzed for overbreadth. Finally, the third *Robertson* category consists of laws that focus on forbidden effects, but without referring to expression at all. Laws within the third category are analyzed to determine whether they violate Or. Const. art. I, § 8 as applied.

*State v. Carr*, 215 Or. App. 306, 311 (2007) [quoting *City of Eugene v. Miller*, 318 Or. App. 480, 488 (1994) (citing *Robertson*, 293 Or. at 417)].

In this case, the Ordinance falls into the second *Robertson* category, as the Ordinance focuses not on the substance of any opinion or subject of communication, but on a forbidden result – namely, the broadcasting of speech in a manner that is loud and disturbing and endangers the comfort or peace of others. Mun. Code § 5.12.110(A). The Ordinance is unconstitutionally overbroad because it sweeps constitutionally protected speech within its scope: Given that abortion is a highly controversial topic, it is virtually certain that someone – perhaps multiple people – attending the farmers' market found their comfort and peace disturbed by Mr. Goodknight's preaching. However, the First Amendment exists precisely to protect speech such as that of AAO's members: Mr. Goodknight's anti-abortion preaching, especially when accompanied by fellow activists holding signs featuring gruesome pictures of slaughtered unborn babies, was intended to shock people's consciences, which would disrupt anyone's comfort or peace. Still, the Supreme Court has held that a city's interest in ensuring the comfort and peace of its citizens is not enough to justify infringement on the constitutionally protected freedom of speech. *See, e.g., Cantwell v. Connecticut*, 310 U.S. 296 (1940) [protecting the right of Jehovah's Witnesses to play an anti-Catholic record on the street in a largely Catholic neighborhood]. The First Amendment exists precisely to protect unpopular speech. Webber v. First Student, Inc., 2011 U.S. Dist. LEXIS 88238 at **9-10 (D. Or. July 12, 2011).

6

■ **Speaker-based restriction:** "Speaker-based laws demand strict scrutiny when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say)." *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1076-77 (9th Cir. 2006) [quoting *Turner*, 512 U.S. at 568].

In this case, the Ordinance only allows the use of sound-amplifying equipment "for the broadcast or amplification of music, news, speeches, or general entertainment *as a part of a national, state, or City event, public festivals or outstanding events* of a noncommercial nature," and then only after the organizer of the relevant event obtains a permit. Mun. Code § 5.12.110(B)(11) (emphasis added). In other words, the Ordinance shows a preference for "responsible persons and organizations" that are hosting organized events and are willing and able to pay the permit fee. The Ordinance forecloses groups like AAO from using sound-amplifying equipment to ensure that their message, which they strongly feel needs to be heard, actually is heard. Furthermore, the Ordinance, as worded, strongly implies that the City will only issue permits for feel-good, celebratory events. Perhaps the City would issue a permit for an organized anti-abortion demonstration, but neither the First Amendment nor Article I, § 8 of the Oregon Constitution require that AAI organize an event to be able to speak their minds or be heard. The Ordinance is therefore an unconstitutional speaker-based restriction.

■ **Content-based restriction:** As stated above, the Ordinance only allows the use of sound-amplifying equipment "for the broadcast or amplification of *music, news, speeches, or general entertainment* as a part of a national, state, or City event, public festivals or outstanding events of a noncommercial nature," and then only after the organizer of the relevant event obtains a permit. Mun. Code § 5.12.110(B)(11) (emphasis added). The preaching done by AAO's street preachers likely falls into the category of "speeches." Nonetheless, the Ordinance prescribes certain types of content – news, music, general entertainment – that can be amplified via sound-amplifying equipment. Even the City's use of the word "speeches" suggests that the speeches given must be formal, as opposed to the off-the-cuff street preaching that AAO's preachers engaged in.

The Ordinance also states the context in which the amplification may occur – i.e., as part of an organized event, such as a festival. If the City only permits the amplification of speech such as AAO's if it takes place within the context of an organized event, then their speech is no longer free. *Sabelko v. City of Phoenix*, 846 F. Supp. 810, 816 (D. Ariz. 1994) [citing *City of Houston v. Hill*, 482 U.S. 451 (1987) to note that "oral protest rests at the very heart of free speech"]. The Ordinance thus restricts speech in a manner that is not constitutionally permissible, and Officers Taylor and Kopp violated AAO's free speech rights by enforcing it, thereby placing the City in a very actionable position.

## III. Demand

"First Amendment jurisprudence is clear that the way to oppose offensive speech is by more speech, *not censorship, enforced silence or eviction from legitimately occupied public space*." *Gathright v. City of Portland*, 439 F.3d 573, 578 (9th Cir. 2006) (emphasis added), cert. denied, 549 U.S. 815 (2006). Here, AAO's abolitionists were the victims of enforced silence at the hands of Grants Pass' police department. PJI thus demands that Grants Pass' police officers immediately cease and desist attempting to

prevent AAO from engaging in speech-related activities on the streets and sidewalks near the farmers' market – or any other location in Grants Pass, for that matter – from this point forward. Such activities include using an amplifier to ensure that the group's speech is heard; while the City of Grants Pass may regulate the volume at which AAO's message is preached, the City cannot prohibit the organization's use of an amplifier entirely. Please note that any future violations of AAO's First Amendment rights, even if done under the color of enforcing Grants Pass Mun. Code § 5.12.110(B)(11), will be met with swift legal action.

I would also strongly recommend that the City amend the Ordinance so that it meets First Amendment standards of constitutionality.

Thank you kindly for your time and attention to this matter. Please feel free to contact me at either (916) 857-6900 or rhacke@pji.org if you wish to discuss this matter further.


Very truly yours,

Ray D. Hacke, Staff Attorney
PACIFIC JUSTICE INSTITUTE
1850 45th Ave. NE
Salem, OR 95110
(503) 917-4409
rhacke@pji.org


CC: Bill Landis
     Chief
     Department of Public Safety
     101 Northwest A St.
     Grants Pass, OR 97526
     blandis@grantspassoregon.gov

# EXHIBIT "B"

## OREGON UNIFORM CITATION AND COMPLAINT

Use for All Violations or Crimes Where Separate Complaint Will Not be
Filed/ORS 153.045 or 133.069

| ☐ CRIME(S)     OR | ☒ VIOLATION(S) | Type: |
| (see A below) (Not Both) | (see B below) | OTHER |

**STATE OF OREGON**

CITY/OTHER PUBLIC BODY: **GRANTS PASS**

COUNTY OF: **JOSEPHINE**

Case No.: **19-28818**

Court: **JOSEPHINE CO CIRCUIT COURT**

**COMPLAINT/SUMMONS** **MID84245**

Reserved for D.A. Use

**DEFENDANT** The undersigned certifies and says that the following person:

ID Type: **NO ID PRES**   ID No:                    State:         Ph.:

Name: Last **MAYBERRY**

First **RICKY**                          MI: **LEE**

Address: **220 FAVER LANE**

City: **RIDDLE**          State: **OR**  Zip: **97469**        Passenger: ☐

Sex: **M**  Race: **WHT**  DOB: **12/30/2004**  Hgt: **6'0"**  Wgt: **130**  Hair: **BRO**

Eyes: **BLU**  Lic. Exp.:              Juv.: ☒  Lic. Class:          Emp. to Drive: ☐

**TIME/PLACE**
At the following time and place in the above-mentioned state and county:

On or About Date/Time: **08/17/2019**          **11:27 AM**

At or Near                           City

**1585 NW WASHINGTON BLVD**

**GRANTS PASS**

NB: ☐   SB: ☐   EB: ☐   WB: ☐

Highway: ☐   Premise Open to Public: ☒  Other: ☐

**VEHICLE** Involving the following:

Year:          Make:                    Model:

Color:              Type:

Regis/Vin/ID#:                    State:

Accident: ☐   Prop. Damage: ☐   Injury: ☐   Endanger Other: ☐

Com'l Veh: ☐   Haz Mat: ☐   Driver Not Reg. Owner: ☐

Other:                    Com'l Pass: ☐

Reserved for Court Use

**OFFENSE(S)** Did then and there commit the following offense(s):

HWY Work Zone: ☐   School Zone: ☐   VBR: ☐   Safety Corridor: ☐

Radar: ☐   Pace: ☐   Laser: ☐   Other: ☐

Alleged Speed:          Designated Speed:          Posted Limit: ☐

Offense #:  **5.36.010**

Warning: ☐   **OBSTRUCTING TRAFFIC**

Presumptive Fine1: **$295.00**

Intentional: ☐   Knowing: ☐   Reckless: ☐

Criminal Negligence: ☐   No Culpable Mental State: ☒

Offense #:

Warning: ☐

Presumptive Fine2:

Intentional: ☐   Knowing: ☐   Reckless: ☐

Criminal Negligence: ☐   No Culpable Mental State: ☐

Offense #:

Warning: ☐

Presumptive Fine3:

Intentional: ☐   Knowing: ☐   Reckless: ☐

Criminal Negligence: ☐   No Culpable Mental State: ☐

**OTHER**

Expl.:

**SIGNATURE**

I certify under ORS 153.045 and 153.990 and under other applicable law and under
penalties for false swearing, do swear/affirm that I have sufficient grounds to and do
believe that the above-mentioned defendant/person committed the above offense(s)
and I have served the defendant/person with this complaint.

Signature of Officer:

Officer name1: **ARTOFF, TIM.**          Officer ID: **54323**

Officer name2:                    Officer ID:

Agency Name: **GRANTS PASS DPS**

Issue Date: **08/17/2019**

**YOUR COURT APPEARANCE DATE, TIME AND LOCATION ARE**

**07/09/2019**          **09:00 AM**

Location: **JOSEPHINE CO CIRCUIT COURT**

**500 NW 6TH STREET**

**GRANTS PASS**          OR   **97526**

**541-476-2309**

# EXHIBIT "C"

Scanned by CamScanner

## OREGON UNIFORM CITATION AND COMPLAINT

Use for All Violations or Crimes Where Separate Complaint Will Not Be
Filed ORS 153.045 or 133.069

| ☒ CRIMINAL (see A below) | OR | ☐ VIOLATION (see B below) | Type OTHER |

COMPLAINT IS/MINIONS
104274

Reserved for D.A. Use

**STATE OF OREGON**
CITY/OTHER PUBLIC BODY **GRANTS PASS**
COUNTY OF **JOSEPHINE**
Case No. **19-39544**
Court **JOSEPHINE CO CIRCUIT COURT**

**DEFENDANT** The undersigned certifies and says that the following person:

| ID Type DL | ID No 8795489 | State OR | Rt. |
Name: Last **KELLIM SR**
First **SHAWN**                    MI: **JAY**
Address 10797 BUCKHORN RD
City **GLIDE**          State **OR**  Zip **97443**          Passenger ☐
Sex **M**  Race **WHT**  DOB **07/20/1969**  Hgt **508**Wgt **175**  Hair **BLD**
Eyes:      Lic. Exp **2027**      Juv. ☐ Lic Class'c      Emp to Drive: ☐

**TIME/PLACE**
At the following time and place in the above-mentioned state and county:
On or About Date/Time **08/15/2019**          **04:20 PM**
At or Near                    City
**1587 NW WASHINGTON BLVD**

NB: ☐  SB ☐  EB ☐  WB ☐       **GRANTS PASS**
Highway: ☐  Premise Open to Public ☐  Other ☒

**VEHICLE** involving the following:

Year:          Make:          Model:
Color:          Type:
Regis/Vin/D#          State:
Accident ☐  Prop. Damage ☐  Injury ☐  Endanger Other ☐
Com'l Veh ☐  Haz Mat ☐  Driver Not Reg. Owner ☐
Other:          Com'l Pass: ☐

Reserved for County Use

**OFFENSE(S)** Did then and there commit the following offense(s):
HWY Work Zone ☐   School Zone ☐  VBR ☐  Safety Corridor ☐
Radar ☐  Pace ☐  Laser ☐  Other ☐
Alleged Speed:          Designated Speed          Posted Limit ☐
Offense # **166.023 [2.A]**
**DISORDERLY CONDUCT I - MISDEMEANOR DOC**
Warning ☐
Presumptive Fine1: **MUST APPEAR**
Intentional ☒     Knowing ☐     Reckless: ☐
Criminal Negligence ☐     No Culpable Mental State: ☐
Offense #:
Warning ☐
Presumptive Fine2:
Intentional ☐     Knowing ☐     Reckless: ☐
Criminal Negligence ☐     No Culpable Mental State: ☐
Offense #:
Warning ☐
Presumptive Fine3
Intentional ☐     Knowing ☐     Reckless: ☐
Criminal Negligence ☐     No Culpable Mental State: ☐

**OTHER**

Expl.

**SIGNATURE**
I certify under ORS 163.045 and 153.990 and under other applicable law and under
penalties for false swearing, do swear/affirm that I have sufficient grounds to and do
believe that the above-mentioned defendant/person committed the above offense(s)
and I have served the defendant/person with this complaint.

Signature of Officer
Officer name1 ARTOFF, TIM.          Officer ID: **84323**
Officer name2          Officer ID:
Agency Name **GRANTS PASS DPS**
Issue Date **08/15/2019**

**YOUR COURT APPEARANCE DATE, TIME AND LOCATION ARE**
**08/10/2019**          **09:00 AM**
Location **JOSEPHINE CO CIRCUIT COURT**
     **500 NW 6TH STREET**
     **GRANTS PASS**          OR  **97526**
     **541-476-2309**

# EXHIBIT "D"

 **Gmail**

**Ray Hacke <rhacke@pji.org>**

## Fwd: Online Form Submittal: Public Safety Commendation or Complaint Form
1 message

**Mason and Layla** <4gknights@gmail.com>
To: Ray Hacke <rhacke@pji.org>

Fri, Apr 24, 2020 at 4:35 PM

Here's my complaint to the PD I just filed.

Mason

---------- Forwarded message ---------
From: <noreply@civicplus.com>
Date: Fri, Apr 24, 2020 at 4:31 PM
Subject: Online Form Submittal: Public Safety Commendation or Complaint Form
To: <4gknights@gmail.com>

### Public Safety Commendation or Complaint Form

| | |
|---|---|
| Employee / Officer Name | Cpl. Moor |
| Date & Time of Contact | 4/18/2020 10:30 AM |
| Location of Contact | Growers Market |
| Circumstances of the Incident | I am not exactly sure the time is correct but I have video evidence of my activity. Cpl. Moor harassed me while preaching without an amplifier and threatened to cite me with Disorderly Conduct. I absolutely deny that I was in violation in either "intentional" or "reckless" behavior. I also assert that his conduct was unconstitutional in that he violated my 1st Amendment rights. I also assert that the section of Disorderly COnduct in the 2nd degree he even threatened me with is facially unconstitutional. I am amazed at the wanton disregard of people's rights here in GP. I went out of my way that day to be kind and preach without an amplifier. Yet I was still harassed! |
| What did the employee / officer do that you wish to commend them for? | *Field not completed.* |
| Do you have any complaints about your experience with the employee / officer? | GPPD officers need to stop harassing law abiding citizens who are peacefully practicing their 1st amendment rights in their city. |
| Name | Mason W. Goodknight |
| Address | 144, Andorra Dr. ROSEBURG,OR 97471 |
| Phone | 5415808202 |
| Would you like this request to | No |

8/18/2020

Case 1:20-cv-00484-AA    Document 55    Filed 03/05/21    Page 35 of 42
Pacific Justice Institute Mail - Fwd: Online Form Submittal: Public Safety Commendation or Complaint Form

be anonymous?

--
"...Repent, and believe in the gospel." Mark 1:15

Hear His voice! Heed His command!
www.repentanceandbelief.com

# EXHIBIT "E"

 Gmail

Ray Hacke <rhacke@pji.org>

## Fwd: Online Form Submittal: Public Safety Commendation or Complaint Form
1 message

**Ryan Clark** <rynogp@gmail.com>
To: Ray Hacke <rhacke@pji.org>

Wed, Jul 22, 2020 at 6:52 PM

---------- Forwarded message ---------
From: <noreply@civicplus.com>
Date: Mon, Jul 20, 2020 at 11:38 PM
Subject: Online Form Submittal: Public Safety Commendation or Complaint Form
To: <rynogp@gmail.com>

### Public Safety Commendation or Complaint Form

| | |
|---|---|
| Employee / Officer Name | Tim Artoff |
| Date & Time of Contact | 7/16/2020 5:00 PM |
| Location of Contact | 160 NW Franklin |
| Circumstances of the Incident | While peacefully assembling on the sidewalk to exercise our 1st amendment rights, Officer Artoff threatened to arrest me for disorderly conduct. He wrongly equated speech with noise, and used a subjective standard to suppress my speech . He threatened force to protect an institution that actively kills human beings, a direct violation of protecting the right to life from our founding documents, and more importantly the command to not kill from God's Word. CSO Gumbert at the Saturday Market on 6/18/20 stated that the department was avoiding addressing noise issues at the market, yet Artoff was quick to threaten arrest against us. |
| What did the employee / officer do that you wish to commend them for? | *Field not completed.* |
| Do you have any complaints about your experience with the employee / officer? | Our ongoing contact with GPPS at Planned Parenthood has culminated in a lawsuit that specifically names Officer Artoff for harassment. He engaged in the exact behavior that we are addressing with the courts. |
| Name | Ryan Clark |
| Address | 761 NE 12th Street |
| Phone | 5412267608 |
| Would you like this request to be anonymous? | No |

# EXHIBIT "F"

 Gmail

**Ray Hacke <rhacke@pji.org>**

---

## FW: Online Form Submittal: Public Safety Commendation or Complaint Form

1 message

---

**shawnkellim** <shawnkellim@yahoo.com>
To: Ray Hacke <rhacke@pji.org>

Mon, Jul 27, 2020 at 1:45 PM

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: noreply@civicplus.com
Date: 7/27/20 1:18 PM (GMT-08:00)
To: shawnkellim@yahoo.com
Subject: Online Form Submittal: Public Safety Commendation or Complaint Form

### Public Safety Commendation or Complaint Form

| | |
|---|---|
| Employee / Officer Name | J Stewart |
| Date & Time of Contact | 7/25/2020 11:30 AM |
| Location of Contact | Growers Market |
| Circumstances of the Incident | I was peaceably assembled at the growers market with my fellow evangelists, tracting and preaching the gospel of Christ. Four officers of the Grants Pass police department were also assembled at the market sometimes sitting in their vehicles and at other times gathering approximately 200ft from my location. At a time that I was preaching I was approached by Mr Stewart and he asked me to turn down my amplifier which I agreed I would do. He stated that the "disorderly noise" was impacting the business located nearest to me and I would be cited for disorderly conduct if I continued. Mr. Stewart also made note of other amplification utilized for music was at an acceptable level to him, something about the "doppler effect". |
| What did the employee / officer do that you wish to commend them for? | *Field not completed.* |
| Do you have any complaints about your experience with the employee / officer? | My complaints are as follows against officer Stewart: 1. In the duration of the conversation the officer stopped me from utilizing my first amendment right of free speech which I was engaged in when the he came into contact with me. 2. I have no evidence that the officer performed an investigation to determine if the allegations of "disrupting a business" were in fact even true. All evidence seems to indicate the business continued dealing with his customers in normal fashion as far |

as masks over their mouths would allow.

3. The officer has no objective standard in which to measure the sound that he cites is "unreasonable".

4. The officer used threat of violence to attempt to stop the usage of free speech.

5. The officer subjectively allowed amplification for music and not for preaching the gospel, a clear content based standard.

6. This is a clear continuation of the harassment that myself and my brethren have received at the hands of the GP police department.

7. Officers of the law have taken an oath to uphold the constitution of the state and the united states, the GP police department and Officer Stewart appear to hold the local unfounded complaints in higher regard than the law of the land they swore to uphold. My complaint would be they have not been trained properly and break the law repetitively.

| Name | Shawn Kellim |
| --- | --- |
| Address | 10797 Buckhorn Road |
| Phone | 5418639090 |
| Would you like this request to be anonymous? | No |

# EXHIBIT "G"

Saturday October 20th 2018, GP Growers Market - Start video at 29 minutes in for Police Interaction. Sadly the video died before the meeting was finished:
https://www.facebook.com/mason.goodknight/videos/10205021794902658/

Friday May 3rd 2019, First Friday GP at SOEC 2019 - Start video 5 minutes and 30 seconds from the end. This is the first time we are told that we cannot use amplification on First Friday. He states it is due to complaints. Complaints don't equal illegal. You hear the officer admit to approving the use of a cone at Planned Parenthood and here. Also of note is that 6 minutes in he is there with no complaint.
https://www.facebook.com/mason.goodknight/videos/vb.1775963228/10205674000367387/?type=3

Saturday May 4th 2019, Growers Market at SOEC 2019 - Start Video at 12 minutes from the end. Lying complaints from Growers Market folks bring the Police. We are again hindered from doing our ministry by their baseless harassment.
https://www.facebook.com/mason.goodknight/videos/vb.1775963228/10205676585672018/?type=3

Saturday May 25th 2019, Boatnik 2019 - Start video 49 minutes and 30 seconds in. For the first time in the almost decade since we have been at Boatnik, the Police decided to shut down our amplification. Obviously they are choosing to target us. I have lots of commentary on this video. Also Mark and Shawn are threatened as well and they chose to preach on anyway. Mark comes in about 1 hour and 47 minutes in. Start video at 2 hours and 18 minutes in for the police to threaten Mark. Start video at 1 hour from the end for Shawn. Shawn goes quite deep into the vendors and the police never return despite their threats. Total harassment.
https://www.facebook.com/mason.goodknight/videos/vb.1775963228/10205750317435266/?type=3

Saturday May 25th 2019, Boatnik 2019 - Start video at 6 minutes and 40 seconds to the end. Shawn testifies about his interaction with police earlier in the day. Listen to the incredible boat noise in this and the other video! You need an amp to be heard! Tyranny.
https://www.facebook.com/mason.goodknight/videos/vb.1775963228/10205751991157108/?type=3

Friday February 28th 2020, Planned Parenthood GP - Start video about 22 minutes and 30 seconds in. The officer starts by lying and telling me they have a city ordinance prohibiting the use of an amplifier. It goes downhill from there. Note this as well. I began preaching at about 5 minutes left of business time of the Dr.'s office who complained. At 32 minutes in I point out a clear noise ordinance violation by cars and no action by police there. A far easier violation to prove. The officer comes up very shortly after that and lies again about the ordinance and eventually lies and says I'm causing public alarm and threatens now to arrest me for disorderly conduct if I continue. Madness and harassment!
https://www.facebook.com/mason.goodknight/videos/vb.1775963228/10206846747245326/?type=3

Friday February 28th 2020, Planned Parenthood GP - Ryan Clark's partner video. Better visual perspective I believe.
https://www.facebook.com/AHASouthernOregon/videos/572284990039806/

Thursday, March 12, 2020, Planned Parenthood GP
https://youtu.be/sbNOtQkfkB8