IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ABOLISH ABORTION OREGON, et al.                    Case No. 1:20-cv-00484-AA
                                                   **OPINION AND ORDER**
            Plaintiff,

     vs.

CITY OF GRANTS PASS, et al.,

            Defendants.

_____

AIKEN, District Judge:

       Plaintiffs Abolish Abortion Oregon ("AAOR"), an organization of Christian

anti-abortion activists, and seven of its members (together, "plaintiffs"), bring this

action against the City of Grants Pass and 50 Doe defendants, claiming a violation of

their right to free speech under the First Amendment.  This action arises from

plaintiffs' use of electronic sound amplification to protest abortion and the City's

enforcement of a municipal ordinance and state statute proscribing "unnecessary" or

"unreasonable noise."  Before the Court is plaintiffs' Motion for Partial Summary

Judgment (ECF No. 65).  For the reasons explained, Plaintiffs' motion is DENIED.

# BACKGROUND

## I.    Factual Background

### A.    *The Parties*

AAOR is an unincorporated association based in Roseburg, Oregon, "whose members consist of Christians from throughout Oregon who are dedicated to calling the public's attention to the horrors of abortion and calling on legislators to abolish and criminalize the inhumane practice." Third Am. Compl. ("TAC") ¶ 2. Individual plaintiffs are members of AAOR who have participated in demonstrations in Grants Pass which drew the attention of Grants Pass Department of Public Safety ("DPS") in response to public complaints about plaintiffs. *See* Goodknight Decl., ECF No. 66; Clark Decl., ECF No. 67; Kellim Decl., ECF No. 68; L. Mayberry Decl., ECF No. 71; R. Mayberry Decl., ECF No. 72; M. Mayberry Am. Decl. ECF No. 73.

Defendants are the City of Grants Pass ("the City"), through DPS, and 50 unnamed Does, who are "legally responsible for the events and happenings" and who "proximately caused" plaintiffs' alleged injuries. TAC ¶¶ 12, 21.

### B.    *Plaintiffs' Activities and Law Enforcement Response*

In Grants Pass, plaintiffs attend events like First Friday (a monthly arts celebration), the annual Boatnik festival, and the Saturday Growers' Market, because of the large crowds those events draw. TAC ¶ 19. At the events, plaintiffs carry anti-abortion signs, pass out gospel tracts, and take turns "open-air preaching," and calling for the criminalization of abortion. TAC ¶¶ 18, 19. In the course of these activities, plaintiffs sometimes use electronic sound-amplification devices

("amplifiers"), intending to reach about "half a block."  TAC ¶¶ 19, 21.

On several different occasions, DPS responded to reports from the public that plaintiffs were "blocking a handicap parking space,"; "using bull horns," and "getting in peoples' faces and blocking entrances,"; "using a microphone," while "attacking people verbally,"; "making so much noise that customers [could not] hear [a fruit-stand owner] in [her] booth,"; and using a "megaphone," "microphone," or "loudspeaker," and "being very vulgar, yelling".  Franz Decl., Exs. 101A, 102, 102A, 102D, 103A, 112.  ECF No. 38.

When responding to those complaints, DPS sometimes asked plaintiffs to turn off the amplifier or to turn the amplifier volume down.  Franz Decl. Exs. 108, 108F, 111, 112, 113.  During some of those encounters, DPS spoke with plaintiffs about the "city noise ordinance," advising that, without a permit, the ordinance prohibited the amplification plaintiffs used.  *See* Franz Decl. Exs. 103, 111, 113.

DPS referred plaintiffs to Grants Pass Municipal Code ("GPMC") § 5.12.110, titled "Unnecessary Noise" (hereinafter, the "Sound Ordinance").  Subsection A of the Sound Ordinance provides: "No person may make, assist in making, continue or cause to be making any loud, disturbing or unnecessary noise which either annoys, disturbs, injures or endangers the comfort, repose, health, safety or peace of others."  GPMC § 5.12.110(A).

Further, Subsection B provides a nonexclusive list of conduct that constitutes "loud, disturbing or unnecessary noises" which include "[t]he use or operation of . . . any sound-amplifying device so loudly as to disturb persons in the vicinity thereof or

in such a manner as renders the use thereof a nuisance." GPMC § 5.12.110(B)(11). Subsection B(11) also outlines a permitting process for loud "broadcast[s] or amplification" that might otherwise violate the ordinance. *Id*.

In this case, although DPS warned plaintiffs that they *could* be cited for violating the Sound Ordinance, DPS has never enforced the Sound Ordinance against any plaintiff. Bartholomew Decl. at 2, ECF No. 22; Hamilton Decl. at 2, ECF No. 28. Moreover, the City represents that the Sound Ordinance is not being enforced against *anyone* because it is under amendment. Hamilton Decl. at 2.

After plaintiffs initiated this action, the City decided to review and revise the Sound Ordinance and advised DPS not to enforce it while amendment is underway. *Id*. In drafting an amended ordinance, counsel represented to the Court that the City requested plaintiffs' direct input to establish a new ordinance "acceptable" to plaintiffs. Tel. Hr'g Tr. at 14, ECF No. 64. Further, plaintiffs, through counsel, provided the City with feedback concerning their objections to proposed drafts. *Id*. at 15. Plaintiffs specifically proposed language to "define the term 'doctor's office' and 'hospitals' to exclude any place where abortion occurs." *Id*. at 23.

While the Sound Ordinance is under review, DPS is enforcing ORS 166.025 and has enforced ORS 166.025(1)(b) and (1)(d)[1] against plaintiffs. Hamilton Decl. at

---

[1]    Plaintiff Jon Clement was cited for Disorderly Conduct under ORS 166.025(1)(d) for "Obstruct[ing] vehicular or pedestrian traffic on a public way." Plaintiffs do not challenge ORS 166.025(1)(d).

2.   Under ORS 166.025, a person "commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person . . . makes unreasonable noise." ORS 166.025(1), (1)(b).   The City enforced ORS 166.025 in an incident involving plaintiff Shawn Kellim near the Planned Parenthood in Grants Pass.

The Grants Pass Planned Parenthood clinic is located in an office complex that includes three other buildings.   Franz Decl. Ex. 110.   During the relevant period, Kellim and other plaintiffs demonstrated outside of Planned Parenthood "at least once per week," and sometimes used amplifiers "at a volume which let [plaintiffs] be heard within a range of roughly half of a city block."   Kellim Decl.; *see also* TAC ¶ 21g-i; Swanson Decl. at 2.

Several times, DPS responded to noise complaints from people working throughout the office complex.   On July 25, 2020, Kellim and other plaintiffs were demonstrating outside the office complex when DPS responded to complaints about a disturbance involving Kellim.   Franz Decl. Ex 115A at 2; TAC ¶ 21g.   DPS advised Kellim that he was demonstrating on private property, and that the property owner had asked DPS to notify Kellim that he was trespassing.   Artoff Decl. at 2, ECF No. 21; Franz Decl. Ex 115A at 2.

On August 8, 2019, DPS responded to calls concerning Kellim using an amplified device heard from beyond a block away.   DPS officers asked Kellim to shut down the amplifier and Kellim complied.   Franz. Decl. Ex 104 A at 2; TAC ¶ 21h.

On August 15, 2019, DPS responded to a call from an employee working in a

building near Planned Parenthood who had complained about loud noise from a bullhorn.  Artoff Decl. at 2; Franz. Decl. Ex 104A.  On arriving, DPS found Kellim using an amplifier.  When Kellim would not turn down the amplifier, DPS cited him for disorderly conduct under ORS 166.025.  Franz. Decl. Exs. 107A; TAC ¶ 21i.

On September 10, 2019, DPS was repeatedly dispatched to investigate multiple calls from people working in different buildings near Planned Parenthood. Complaints involved "being harassed" by plaintiffs, including Kellim, who at one point was "using a megaphone from a parked car" and at other times from driveways around the office complex.  Franz Decl. Ex. 108A-C.  Several employees in the surrounding buidlings reported inability to complete their work due to the noise.  *Id.* One office worker reported to police that the noise was like a "barking dog."  Franz Decl. Ex. 108E.  Another person reported that she could hear noise from the amplifier over her headphones, even with her office door and windows closed.  Franz. Decl. 108H.  On the scene, DPS pointed out to Kellim other protesters at the office complex whose demonstrations were not being complained of or investigated because those protestors were not using loud amplification.  Franz. Decl. Ex 108.  After officers spoke with Kellim multiple times about the noise complaints, Kellim did not alter or change the volume of his amplifier.  Franz Decl. Ex. 108D at 2.  DPS cited Kellim for disorderly conduct under ORS 166.025(1)(b) based on "unreasonable noise."  Franz Decl. Ex. 108D at 1-2.

## II.    Procedural History

Plaintiffs filed this action on March 24, 2020, asserting a single claim under 42

U.S.C. § 1983 for First Amendment Retaliation and challenging the constitutionality of the Sound Ordinance.  Compl. ¶¶ 27–31, ECF No. 1.

Plaintiffs later filed a Motion for Preliminary Injunction seeking to prevent defendants from enforcing both the Sound Ordinance and ORS 166.025.  Pls.' Mot. Prelim. Inj., ECF No. 17; Pls.' Reply, ECF No. 41.  The Court determined that, because defendants were not enforcing the Sound Ordinance, it could not find that plaintiffs were likely to suffer irreparable harm from the enforcement of the Sound Ordinance in the absence of a preliminary injunction.  ECF No. 50.  The Court declined to address plaintiffs' constitutional challenge to ORS 166.025 because plaintiffs had not raised that challenge in their First Amended Complaint.  *Id.* at 12-13.  Plaintiffs subsequently amended their complaint to include a challenge to the constitutionality of ORS 166.025.

In essence, plaintiffs allege that "[d]efendants presumably aim to enforce" the Sound Ordinance and that the Sound Ordinance violates plaintiffs' constitutionally protected rights because it is overbroad, vague, and imposes content-based and speaker-based restrictions through its permit provision.  TAC ¶¶ 30-34.  Plaintiffs further allege that ORS 166.025(1)(b) is unconstitutional, both facially and as-applied, because it does not define "what makes noise 'unreasonable,'" and because DPS will enforce ORS 166.025(1)(b) "in a manner aimed at suppressing the expression of ideas that hearers deem offensive."  *Id.*  In their Complaint, plaintiffs seek (1) a declaration that the Sound Ordinance and ORS 166.025(1)(b) are unconstitutional, both facially and as applied to plaintiffs; (2) preliminary and

Page 7 – OPINION AND ORDER

permanent injunctions preventing defendants from "enforcing both the Sound Ordinance and ORS 166.025(1)(b) against [p]laintiffs in a manner that unconstitutionally abridges [plaintiffs'] First Amendment Freedoms[;]" and (3) damages.  TAC ¶ 17.

## SUMMARY JUDGMENT STANDARD

Now before the Court is plaintiffs' Motion for Partial Summary Judgment. ECF No. 65.   A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor.  *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Here, the material facts are not in dispute.  Accordingly, the Court turns to the legal questions presented by the parties.

## DISCUSSION

In their Motion for Summary Judgment, plaintiffs ask the Court to grant the declaratory relief and permanent injunction sought in plaintiffs' TAC, leaving damages as the sole issue to be resolved at trial.  Pls.' Mot. Part. Summ. J. ("MPSJ") 1, ECF No. 65.  Plaintiffs reprise the allegations in their TAC, contending that the

Sound Ordinance and ORS 166.025(1)(b) violate the First Amendment.[2]

Defendants respond that plaintiffs are not entitled to summary judgment because the Oregon Court of Appeals has upheld the constitutionality of ORS 166.025 (1)(b) and because DPS had probable cause to enforce ORS 166.025 against Kellim. Defendants also assert that plaintiffs are not entitled to summary judgment concerning the Sound Ordinance because the ordinance has never been enforced against plaintiffs and because it is constitutional. The Oregon Attorney General filed an amicus brief, ECF No. 74, in support of defendants' response and addressing plaintiffs' First Amendment facial challenge to ORS 166.025(1)(b).

## I.    The Sound Ordinance

The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes courts to grant declaratory relief in cases of "actual controversy" within their jurisdiction. *See Evers v. Dwyer*, 358 U.S. 202, 203 (1958) ("federal courts will not grant declaratory relief in instances where the record does not disclose an actual controversy.") Courts must determine whether an actual case or controversy exists within the meaning of Article III of the United States Constitution. *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir.1994). The basic test is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

---

[2]    Plaintiffs make passing reference to Article I, Section 8, of the Oregon Constitution in their Third Amended Complaint and Motion for Partial Summary Judgment. However, plaintiffs' developed arguments concern application of the First Amendment.

of a declaratory judgment. *Maryland Cas. Co. v. Pac. Coal & Oil Co*., 312 U.S. 270, 273 (1941); *see Aydin Corp. v. Union of India*, 940 F.2d 527, 528 (9th Cir.1991). This test applies throughout the lawsuit and a claim for declaratory relief may become moot where a change in the circumstances that prevailed at the beginning of the case "forestalls any occasion for meaningful relief." *Gator.com Corp. v. L.L. Bean, Inc*., 398 F.3d 1125, 1129 (9th Cir.2005).

Here, the Court concludes that declaratory relief is inappropriate at this time because no real controversy exists between the parties on the issue of the Sound Ordinance. Plaintiffs' claim for declaratory relief does not rise to the level of an ongoing substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Gator.com*, 398 F.3d at 1129.

First, it is undisputed that defendants are no longer enforcing the Sound Ordinance, which weighs against a finding of immediacy. It is also undisputed that defendants have never enforced the Sound Ordinance against plaintiffs and plaintiffs have not produced evidence that the Sound Ordinance has been enforced against anyone else, which weighs against the reality of the controversy. Third, plaintiffs do not refute their involvement, through counsel, in the Sound Ordinance amendment process, where plaintiffs have had direct input in revising the very ordinance they seek the Court to declare unconstitutional. That is a circumstance "that forestalls any occasion for meaningful relief" from the Court. *Id*.

The evidence is that DPS has ceased all reliance on the Sound Ordinance while the City revises it. Because the Court must inquire whether a controversy requisite

to relief exists throughout the lawsuit—not merely whether the controversy existed at the initiation of the lawsuit—the Court concludes it cannot grant the declaratory relief plaintiffs seek where, as here, the controversy is no longer real or immediate. *Maryland Cas. Co.,* 312 U.S at 273; *see also Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (holding that, when determining if declaratory judgment is appropriate, the inquiry is whether a controversy exists at time of hearing, not when action was first initiated).

Plaintiffs also request preliminary and permanent injunction against enforcement of the Sound Ordinance.  In addition to other elements, a party seeking injunctive relief must show that they have "suffered an irreparable injury." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010).  Plaintiffs contend that they have suffered irreparable injury because DPS has referenced the Sound Ordinance in past interactions with plaintiffs, even though DPS has "neither cited nor arrested any members" under the Sound Ordinance.  Pls. Reply in Opp'n. 26., ECF No. 79.

But "injunctive relief looks to the future," *Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965), and is "designed to deter." *Rondeau v. Mosinee Paper Corp*., 422 U.S. 49, 61 (1975).  Here, as explained above, the City is no longer enforcing the Sound Ordinance at all, leaving an absence of conduct to deter.  The Court also observes that plaintiffs are not in a position of mere reliance on the City's word that it is revising the ordinance, but that plaintiffs participated in its revision by providing input on the text for a new ordinance.  That latter fact bears on the Court's determination concerning whether plaintiffs have suffered an *irreparable* injury, given that any

corrective relief plaintiffs seek is apparently underway. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) (the "key word" in the injunction analysis "is irreparable . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (internal quotation marks omitted)

In sum, plaintiffs have not established that they are entitled to summary judgement on the issue of declaratory or injunctive relief concerning the constitutionality of the Sound Ordinance.

## II.    ORS 166.025(1)(b)

Plaintiffs seek a declaration that ORS 166.025(1)B(b) is unconstitutional, both on its face and as applied.    MPSJ at 1-2.    Plaintiffs' facial challenge to ORS 166.025(1)(b) asserts that the statute is unconstitutionally vague and overbroad. Unlike the Sound Ordinance, DPS has enforced ORS 166.025(1)(b) against plaintiffs, and specifically Kellim, as described above.    The City also states that it will continue to enforce ORS 166.025(1)(b).    Accordingly, plaintiffs have established that an active controversy exists, overcoming a threshold requirement declaratory relief, and the Court will therefore address the merits of plaintiffs' argument.    *Kearns*, 15 F.3d at 143.

Plaintiffs also assert that they are entitled to an injunction.    To obtain a permanent injunction, a "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of

hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). When the government is the defendant, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

### A.    *First Amendment Facial Challenge*

A law may be facially unconstitutional in two ways. The first kind of facial challenge asserts that the ordinance "is unconstitutional in every conceivable application," and "could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998*), as amended on denial of reh'g* (July 29, 1998) (quoting *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 796 (1984)). The second type of facial challenge asserts that the ordinance is written so broadly that it includes constitutionally protected activities within its prohibitions. *Id*. In this case, plaintiffs bring both types of facial challenge.

### 1.    **Vagueness**

Plaintiffs argue that ORS 166.025(1)(b) is unconstitutionally vague because it does not define what makes noise "unreasonable" and contains no volume limits, duration limits, or allowances for different circumstances. MPSJ at 17. Plaintiffs also assert that because the term "unreasonable noise" is not defined, it allows for "arbitrary and discriminatory enforcement" and permits DPS "unfettered discretion"

to determine "how loud is too loud at a given time and place." MPSJ at 9. Plaintiffs maintain that if DPS can "arbitrarily enforce" ORS 166.025(1)(b), then plaintiffs must "make educated guesses as to whether the volume of the sound they produce in a given location is reasonable and hope they guess right lest a DPS officer threaten to arrest them." MPSJ at 9.

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 (1982).

Here, a state court has proffered a limiting instruction. The Oregon Court of Appeals has previously upheld the constitutionality of ORS 166.025(1)(b) and squarely addressed whether ORS 166.025(1)(b) is vague in violation of the First Amendment. Specifically, in *State v. Marker*, the court construed the terms "unreasonable" and "noise" in ORS 166.025(1)(b), concluding that those terms are not unconstitutionally vague, both terms being "words of common usage with a well defined, well understood and generally accepted meaning, and, as written, enabl[ing] men of common intelligence to understand what conduct is prohibited." 21 Or. App.

671, 675, 677 (1975).

In arriving at that conclusion, the court explained that "the word 'unreasonable' is often used in the law, and is commonly defined as: not conformable to reason, irrational, not governed or influenced by reason, immoderate, excessive, exorbitant, foolish, unwise, absurd, silly, preposterous, senseless and stupid." *Id*. The court then determined that "the word 'noise' is also a well defined term. 'Noise' most commonly means: a sound; loud, confused, or senseless shouting; any sound that is undesired or that interferes with something to which one is listening; an unpleasing sound; a sound that lacks agreeable music quality or is noticeably loud, harsh or discordant; inarticulated and confused sound." *Id*. at 675-76.

On those grounds, the court determined that it was "satisfied that the language of ORS 166.025(1)(b) is not vague, and that it contains the requisite specificity for a penal statute." *Id*. at 677.

Later*,* when the court decided a challenge under the free speech clause of the Oregon Constitution, Article I, section 8, it determined that, insofar as the term "unreasonable noise" referred to noise caused by speech, ORS 166.025(1)(b) referred only to the "noncommunicative elements" of the speech, such as "volume, duration, etc." *State v. Rich*, 218 Or. App. 642, 647 (2008). Accordingly, the court deemed ORS 166.025(1)(b) "a classic time, place, or manner law." *Id*.

The court reaffirmed its interpretation announced in *Rich*, that "unreasonable noise" refers to the noncommunicative elements of speech, concluding that the interpretation also applies in the First Amendment context. *See State v. Pucket*, 291

Or. App. 771, 778 (2018), *review denied*, 363 Or. 727 (2018) ("For the same reasons that the content-neutral application of ORS 166.025(1)(b) to defendant's amplified speech does not run afoul of Article I, section 8, it also passes muster under the First Amendment 'time, place or manner' analysis.") (quoting *Ward v. Rock Against Racism*, 491 US 781, 791 (1989)).

The Court finds no reason why it should depart from the reasonable interpretation of the Oregon Court of Appeals with respect to the proper interpretation of ORS 166.025. *See Ryman v. Sears, Roebuck and Company*, 505 F.3d 993, 995 (9th Cir. 2007) (where state intermediate appellate court has interpreted state statute, federal court follows relevant precedent, unless there is convincing evidence that the state's supreme court likely would not follow it.).

Accordingly, the Court is not persuaded by plaintiffs' argument that the term "unreasonable noise" is vague, or that it is unclear what the statute proscribes, given the above interpretation by the state courts, and the context of the statute as a whole, which specifically aims to prohibit noise that causes "public inconvenience, annoyance or alarm, or recklessly creating a risk thereof."

And contrary to plaintiffs' assertion, DPS is not "unfettered" in determining "how loud is too loud." ORS 166.025 limits enforcement of noise which is "unreasonable," and made "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." In enforcing ORS 168.025, at Planned Parenthood, DPS based its decision on the fact that the amplified sound was unreasonable for the area after responding to numerous citizens' complaints that they

were being subjected to excessive volumes that disrupted businesses during the day and disturbed patrons of the office park as they entered and exited the various buildings.  As such, DPS enforcement was for a "purposes unrelated to the content of expression," even though it may have had an "incidental effect" on plaintiffs' speech. *Ward*, 491 U.S. at 791.

Plaintiffs insist that the vagueness of ORS 166.025(1)(b) permits DPS to judge reasonableness "on sheer volume and duration alone", when instead "[t]he reasonableness of the volume and duration of speaker's speech must be viewed in light of the activities and noise level that are customary in a given area."  MPSJ at 9 (citing *Hampsmire v. City of Santa Cruz*, 899 F. Supp. 2d 922, 933 (N.D.Cal. 2013).

The Court agrees with plaintiffs' cited authority, but reaches the opposite conclusion.  What noise is unreasonable in a suburban office park should not be difficult for plaintiffs to ascertain, "in light of activities and noise level that are customary" to that area.  Plaintiffs' argument that it is impossible to "guess" whether they are making unreasonable noise is belied by the sheer number of citizen complaints they receive directly because of the noise level associated with plaintiffs' demonstrations.

Accordingly, the Court concludes that plaintiffs have not demonstrated that they are entitled, as a matter of law, to summary judgment on the issue of vagueness.

### 2.    Overbreadth

The court may strike down a statute as overbroad under the First Amendment "if a substantial number of its applications are unconstitutional, judged in relation to

the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473, (2010). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

For a challenge of overbreadth to succeed, there must be "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of City Council*, 466 U.S. at 801. Even if a statute at its margins infringes on protected expression, facial invalidation is inappropriate if the remainder of the statute covers a whole range of easily identifiable and constitutionally proscribable conduct. *Osborne v. Ohio*, 495 U.S. 103, 112 (1990).

Here, ORS 166.025(1)(b) is not "specifically addressed to speech," *Hicks*, 539 U.S. at 124, but to disorderly *conduct*. As discussed above, to the extent that "unreasonable noise" can refer to speech, the Oregon Court of Appeals has explicitly construed that phrase to refer only to speech's noncommunicative elements, not to speech itself.

Further, Oregon appellate courts have expressly held that ORS 166.025(1)(b) is not overbroad. *Marker*, 21 Or. App. At 679. In *Marker*, the court explained that the statute was not overbroad, as long as it was applied to prohibit noise only when there was "a clear and present danger of violence" or if "the communication was not constitutionally protected speech, but merely a guise to disturb persons." *Id.* at 678-

79.

Plaintiffs seize on that limiting principle, asserting that, according to *Marker,* ORS 166.025(1)(b) cannot apply to them, because it must be interpreted narrowly to prohibit only noise that was "non-communicative," or to prohibit only "communication that causes a clear and present danger."  MPSJ at 18.

But the state court directly repudiated the limiting principle in *Marker* in favor of later interpretations that "unreasonable noise" applies to the noncommunicative elements of speech.  *See Pucket*, 291 Or. App. 771, 777 (2018) ("To the extent that *Marker* can be understood to place a limiting construction on ORS 166.025(1)(b), that construction has been superseded by the more recent construction" announced in *State v. Rich,* 218 Or. App. 642 (2008)).

Plaintiffs provide no analysis bearing on whether a "substantial number" of ORS 166.025's applications "are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Stevens*, 559 U.S. at 473.  Therefore, accepting the legal principles discussed above and the scant analysis on this issue provided by the parties, the Court determines that this is paradigmatic case of a state statute of legitimate reach that could apply to any noise—here, bullhorns and loud, continuous amplification—when unreasonable and intended to cause public inconvenience, annoyance, or alarm.  The reach of ORS 166.025 is directed at the noncommunicative elements of speech and plaintiffs point to no "realistic danger" that ORS 166.025 will "significantly compromise recognized First Amendment protections of parties not before the Court."  *Members of City Council*, 466 U.S. at 801.

Accordingly, plaintiffs have not demonstrated that they are entitled as a matter of law to summary judgment on the issue of overbreadth.

### B.    *"As-Applied" Challenge*

Plaintiffs argue that "[t]he City's threats to arrest [p]laintiffs for disorderly conduct are aimed at chilling [p]laintiffs' exercise of their right of free speech, thereby making ORS 166.025(1)(b) unconstitutional as applied to AAOR." MPSJ at 4. To support that claim, plaintiffs allege that street musicians play their music "at the same volume as plaintiffs were preaching." MPSJ at 2. Although, plaintiffs also state that there was an "absence of complaints" about street musicians. MPSJ at 2. And further, when plaintiffs pointed out to DPS that street musicians were "likewise using amplification," DPS explained that "the musicians were operating their amplifiers at what [DPS] considered an acceptable level." TAC ¶ 22.

"An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1275 (9th Cir. 2017). As-applied challenges are not based solely on the application of an allegedly unconstitutional law to a particular litigant. Rather, a litigant must "separately argue that discriminatory enforcement of a speech restriction amounts to viewpoint discrimination in violation of the First Amendment." *Desert Outdoor Advert., Inc. v. City of Oakland*, 506 F.3d 798, 805 (9th Cir. 2007).

In *State v. Pucket*, the Oregon Court of Appeals set forth the proper analysis for an "as-applied" challenge to ORS 166.025(1)(b) under Article I, section 8 of the

Oregon constitution and determined that the same reasoning applies in the First Amendment context. 291 Or. App. at 778. There, the defendant had been cited under ORS 166.025(1)(b) following complaints of his continuous use of a loud bullhorn outside of a grocery store. At the close of the state's case in the bench trial that followed, the defendant moved for a judgment of acquittal arguing that he was cited because officers disagreed with his viewpoint, in violation of his right to free speech.

The trial court denied that motion, determining that the defendant had been arrested for making unreasonable noise rather than for the content of his speech. *Id.* at 774. On appeal, the court affirmed, stating that to determine whether a statute violates constitutional protections for free speech, a court must examine evidence concerning "how the law was applied to determine whether the application was directed at the content or the expressive nature of an individual's activities, advanced legitimate state interests, and provided ample alternative opportunities to communicate the intended message." *Id.* at 774-75. The court further explained that an as-applied challenge to an "unreasonable noise" prosecution under ORS 166.025(1)(b) "generally will fail if the defendant has been prosecuted based on the 'noncommunicative elements' of his speech, such as volume, rather than on its content." *Id.* at 775.

Here, the record includes ample evidence that DPS enforced ORS 166.025(1)(b) against plaintiffs for content-neutral reasons, that is, for amplifying speech so loudly that it created "unreasonable noise" that recklessly created a risk of public inconvenience, annoyance, or alarm.

The undisputed evidence includes that the only time DPS cited or discussed enforcement of ORS 166.025(1)(b) occurred when plaintiffs were using a bullhorn, megaphone, or other amplification.  At the Growers Market and other events, DPS responded to calls that plaintiffs used a bullhorn or amplifier immediately near the vendor's booths and were reportedly getting loud in people's faces and blocking sidewalks.

At Planned Parenthood, there is ample evidence that on different occasions, DPS was dispatched due to numerous complaints that plaintiff Kellim was trespassing on private property, harassing patrons and patients in the parking lot, and using a loudspeaker from a parked vehicle and, in these instances, amplifying his voice so loudly that people in nearby buildings could not perform their work.  That some likened it to the sound of a "barking dog" makes it unclear from the record whether those who complained could even understand the specific content of what Kellim was saying.  DPS explained to Kellim and other plaintiffs that it was the amplification—not the content of his message—which created "unreasonable noise."

Concerning plaintiffs' argument that AAOR members were treated disparately compared to "street musicians," it is undisputed that there were no street musicians at Planned Parenthood, where DPS enforced ORS 166.025.  Evidence in the record demonstrates that there were, however, other AAOR protestors demonstrating without loud amplifiers while chanting and holding anti-abortion signs.  Those AAOR protestors were not investigated or cited because they were determined not to be making unreasonable noise.  Moreover, DPS pointed out to Kellim those protestors

demonstrating without loud amplifiers, advising Kellim that he too was welcome to demonstrate on the sidewalk if he simply turned down the volume of his amplifier, which he declined to do.

At the Grower's Market where street musicians were present, plaintiffs do not allege any facts that lead to an inference that street musicians, like plaintiffs, were playing so loudly near vendor booths that vendors and patrons alike could not hear one another, nor does the record show that musicians were blocking sidewalks or getting in people's faces. Those were the complaints that led DPS to investigate plaintiffs and no similar conduct was reported about any street musician at the Grower's Market. In fact, plaintiffs state that, when DPS responded to noise complaints about AAOR demonstrators, DPS showed plaintiffs that that street musicians were using amplification but doing so at a volume that did not interfere with the vendors, and that DPS asked plaintiffs to do the same.

Evidence that other AAOR protestors were permitted to chant and carry signs at Planned Parenthood and that, at the Grower's Market, plaintiffs were told they could use amplification if they did so at an acceptable level, leads the Court to conclude that plaintiffs have not demonstrated that DPS's enforcement of ORS 166.025(1)(b) was content based. Rather, the evidence shows that enforcement was aimed at responding to complaints of unreasonable noise.

Accordingly, plaintiffs have not shown that enforcement of ORS 166.025(1)(b) was "directed toward the speech's content as opposed to its noncommunicative elements." *Pucket*, 291 Or. App. at 775. Rather, DPS enforced ORS 166.025(1)(b) to

serve the City's legitimate interest in preventing unreasonable noise intended to cause public annoyance, inconvenient, or alarm, and plaintiffs were provided "ample alternative opportunities"—either by turning down the volume of their amplification or turning the amplifier off—to communicate plaintiffs' intended message. *Pucket*, 297 Or. App. at 774-75.

Incidentally, the Court observes that plaintiffs do not contend that DPS lacked probable cause to enforce ORS 166.025, nor do they argue that they did not intend to cause "public inconvenient, annoyance, or alarm" when amplifying their demonstrations. In similar circumstances, insufficient demonstration that officials lacked probable cause to enforce the law has led to courts to conclude that a claim for discriminatory enforcement fails. *See Rosenbaum v. City & Cty. of San Francisco*, 484 F.3d 1142, 1163 (9th Cir. 2007) (concluding that the district court properly rejected viewpoint discrimination claim where citations were legitimately based on probable cause).[3]

In sum, plaintiffs have not demonstrated that they are entitled, as a matter of law, to the declaratory relief they seek in their challenge to ORS 166.025. Further, plaintiffs cannot demonstrate that they are entitled to preliminary or permanent

---

[3]    The Court observes that Plaintiffs supply no analysis specifically addressing 42 U.S.C. § 1983 for First Amendment Retaliation. To the extent that plaintiffs intended to, the court notes that plaintiffs' failure to show that DPS lacked probable cause also leads to failure to sustain a claim under § 1983. *See Nieves v. Bartlett*, __ U.S. __, __, 139 S. Ct. 1715, 1723 (2019) ("in retaliatory prosecution cases [plaintiffs must] show more than the subjective animus of an officer and a subsequent injury; plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause.").

injunctive relief, where the Court concludes from this record that the public interest would be disserved should the Court enjoin enforcement of a state statute prohibiting unreasonable noise made intentionally or recklessly to cause public inconvenience, annoyance, or alarm.  *See eBay Inc.,* 547 U.S. at 391 (setting forth factors for permanent injunction); *see also Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction"); *Benisek v. Lamone*, __ U.S. __, __, 138 S. Ct. 1942, 1943-44 (2018). (litigant must show that "preliminary injunction is in the public interest."). Accordingly, plaintiffs have not demonstrated that they are entitled to summary judgment.

## CONCLUSION

Plaintiffs have not met their burden to prove that, as a matter of law, they are entitled to declaratory and injunctive relief for their facial and as-applied challenge to the constitutionality of the Sound Ordinance or ORS 166.025(1)(b).  Accordingly, Plaintiffs' Motion for Partial Summary Judgment, ECF No. 65, is DENIED.

It is so ORDERED and DATED this ____24th____ day of March 2022.


 /s/Ann Aiken_____

ANN AIKEN

United States District Judge